Clayton **TAYLOR**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–01–00217–CR.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 13, 2002.

Decided Oct. 17, 2002.

Rehearing Overruled Nov. 19, 2002.

Michael D. Mosher, Law Office of Michael D. Mosher, Paris, for appellant.

Grant Sparks, Assistant Attorney General—Internet Bureau, for appellee.

Before MORRISS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Clayton Taylor appeals his conviction for possession of child pornography in the form of individual photographs allegedly found on the hard drive of his computer. He was tried in a single trial on ten separate counts. A jury found him not guilty on count one and guilty on counts two through ten. Each separate count alleged he was in possession of one specific photograph.[1] The court assessed his punishment at nine years' imprisonment.

---

1. The State and Taylor agreed to sever the last two counts, which alleged possession of pornographic photographs of a child in sexual activity with a horse. However, the State

Taylor contends that the trial court erred by denying his motion to transfer venue, that the State failed to produce critical exculpatory evidence which had been ordered produced by the trial court, that the State failed to provide copies of material physical evidence for defense inspection, and that trial counsel's failure to object to inadmissible hearsay deprived him of constitutionally-required effective assistance of counsel. Taylor also contends the trial court's admission of hearsay not subject to a recognized exception deprived him of his right of confrontation, as guaranteed by the Sixth Amendment to the United States Constitution, and that its admission of "highly prejudicial" extraneous "bad acts" violated Rules 403 and 404 of the Texas Rules of Evidence. Taylor finally contends that the trial court erroneously refused to admit a book into evidence and generally argues that "pervasive prosecutorial misconduct" and errors by the trial court as set out above deprived him of both substantive and procedural due process.

Taylor was indicted on the complaint of Mike Marshall, Chief Investigator of the Attorney General's Internet Bureau, as part of continuing investigations about the sale of child pornography over the internet.[2] The evidence shows Taylor was made the target of an investigation because his name was found in the records of Landslide Corporation, a business that had provided credit card verification for pornography websites. Landslide had been the target of a child pornography investigation, and its principals had been prosecuted and convicted for their involvement in child pornography. The State did not allege or prove the pictures the subject of this prosecution were purchased through Taylor's Landslide activities, and it appears Taylor's activities through Landslide ceased over a year before the warrant was issued in this case.

Marshall was the State's primary witness. His investigation of Taylor began in October 2000 based on the discovery of Taylor's name in the Landslide database. Taylor was a high school band director, employed in Red River County. Marshall and deputies from the Red River County Sheriff's Department commenced their investigation of Taylor, at Taylor's home, on his return from an out-of-town band competition trip. When confronted with questions about his internet usage, Taylor appeared to Marshall to be in a nervous, excited state.

Marshall testified that Taylor, after being given *Miranda*[3] warnings, acknowledged accessing and downloading internet pictures of children under the age of seventeen years engaging in sex, as well as stories describing sexual activities between adults and children.[4] Marshall described Taylor as being at all times cooperative with investigators and speaking freely about his activities.

Taylor provided to officers a hand-written statement, which was read to the jury.[5]

announced at oral argument it did not intend to pursue those allegations.

2. This case was prosecuted by an assistant attorney general who, along with several other assistants, were sworn in as assistant district and county attorneys for Red River County.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. It is noted Taylor was not indicted for accessing and downloading pictures, but for possession of specific pictures.

5. "My name is Clayton Taylor. I live at 210 NE 2nd Street, Bogota Tx. My date of birth is 12/17/61. During the last 20 months, I have engaged in viewing and downloading of material of a nature that involved children under the age of 17 engaged in illegal under age sexual acts. This material included pictures

Taylor told the investigators he had been downloading this material for the last twenty months, but denied ever having any inappropriate contact with children. Taylor told the officers he was undergoing counseling for his behavior.

*Motion to Transfer Venue*

Taylor filed a motion to transfer venue August 20, 2001. His motion was based on his allegation that articles appearing in the *Paris News,* the latest of which appeared August 17, 2001, caused undue pretrial prejudice to him. The August 17 article set out not only the allegations of the charges against him, but also described all of the extraneous acts and materials the State intended to introduce into evidence. The article also described allegations of inappropriate contact (kissing) with a student,[6] as well as types of allegedly pornographic photographs that were the subject of the two counts of the indictment that were severed.[7] Attached to Taylor's motion, along with a copy of the newspaper article, were the affidavits of Taylor and two additional persons, Jeana Smith and Vickie Bryant, residents of Red River County, who stated under oath that, because of the existing knowledge of the case by members of the community, and because of the newspaper article, Taylor would be unable to get a fair trial in the county. The State filed no controverting affidavits.

On the day of trial, August 20, 2001, but before voir dire of the jury panel, the court conducted a hearing on Taylor's motion. At the hearing, Taylor called three wit-

nesses: Jack Herrington, a former county and district attorney of Red River County, as well as Bryant and Smith, affiants, who testified Taylor could not get a fair trial in Red River County. Bryant and Smith testified—and stated in their affidavits—that the community was prejudiced against Taylor, that they (the community) wanted to "hang the sucker." Although the State presented no controverting affidavits or evidence, the trial court nevertheless carried the motion through the jury selection process. After the completion of voir dire and the selection of a jury, the trial court denied the motion.

■ A trial court may grant a change of venue on the written motion of the defendant in any felony or misdemeanor case punishable by confinement. The motion must be supported by the defendant's own affidavit and the affidavits of two credible persons, residents of the county of prosecution, stating that there exists in the county of prosecution "so great a prejudice against him that he cannot obtain a fair and impartial trial." TEX.CODE CRIM. PROC. ANN. art. 31.03(a)(1) (Vernon 1989). The credibility of the persons making the affidavits, or their means of knowledge, may be attacked by the affidavit of a credible person, which forms a factual issue to be determined by the trial court. TEX.CODE CRIM. PROC. ANN. art. 31.04 (Vernon 1989).

■ A defendant's proper motion to change venue entitles such defendant to a change of venue as a matter of law unless the State files controverting affidavits. *Lundstrom v. State,* 742 S.W.2d 279, 281–82 (Tex.Crim.App.1986). The reason for

---

as well as short stories. I did this as fantasy and have not let it interfere with the performance of my duty as a teacher within the community. These acts were done knowing full well of the consequences and were used only as masturbatory fantasies. I, hereby state that I have not been forced to make this

statement and do so voluntarily and under no duress."

6. These allegations were never brought before the trial court.

7. See footnote 1.

this rule is that "in the absence of controverting evidence, there is no issue of *fact* to be resolved." *Id.* at 282, *quoting McManus v. State*, 591 S.W.2d 505, 516 (Tex. Crim.App.1979). However, this right is waived by the defendant if he or she participates in a hearing on the merits of the motion and allows the state to put on evidence in such hearing, consequently rendering the issue one of fact for determination by the trial court. *Id.; Cooks v. State*, 844 S.W.2d 697, 730 (Tex.Crim.App. 1992).

■ In *Cooks*, the court held that the appellant waived his right to a change of venue as a matter of law by participating in hearings on the merits of the motion and allowing the state to put on evidence, without objection, controverting the appellant's motion, because when the issue was joined by the introduction of such evidence, a fact issue was then raised which required a decision by the trial court. *Cooks*, 844 S.W.2d at 730; *see Stapleton v. State*, 565 S.W.2d 532 (Tex.Crim.App. [Panel Op.] 1978).

> The presentation of an application for change of venue, properly verified, makes it incumbent upon the trial judge to change the venue, unless the application is controverted in the man- ·ner prescribed by statute, or unless the controverting affidavit is waived by the accused, and evidence heard justifying the denial of the motion.

*Stapleton*, 565 S.W.2d at 533–34, *quoting Cox v. State*, 90 Tex.Crim. 106, 234 S.W. 72, 73 (1921); *see Cooks*, 844 S.W.2d at 730.

■ In this case, the State did not file any counteraffidavits. At that point, Taylor was entitled as a matter of law to his change in venue. However, a hearing was then conducted on the venue issue without objection and the motion carried pending the completion of voir dire. The State argues that, by failing to object and by his participating in this hearing, Taylor waived his right, as a matter of law, to the change in venue.

The Texas Court of Criminal Appeals described in *Lundstrom* the circumstances under which a defendant in this situation waives this right:

> The defendant waives this right if he participates in a hearing on the motion when the State has filed no controverting affidavits. . . . "Where the defendant . . . allows the trial court to hear the merits of the issue and to thus exercise its discretion in determining the issue of fact, he cannot thereafter argue that no issue of fact was raised and that he was entitled to the change as a matter of law." [Quoting from *McManus*, 591 S.W.2d 505.] Therefore if the defendant, though entitled to a change of venue as a matter of law, nevertheless puts on evidence concerning the reasons for the change of venue, and *allows the State to do so*, the issue then becomes one of fact for the trial court to determine.

*Lundstrom*, 742 S.W.2d at 282 (emphasis added) (citations omitted).

Although Taylor put on evidence concerning the reasons for the change of venue when the State had filed no controverting affidavits, the State failed to put on any evidence of any sort at the hearing. In the absence of controverting evidence, there is no issue of fact to be resolved. *Id.* Further, the cross-examination of Taylor's witnesses by the State showed nothing more than that the witnesses did not know the people on the jury panel or their individual ability to act fairly. This does not raise a fact issue on a venue determination. The fact that Taylor's witnesses were unable to testify on cross-examination that any of the veniremembers had any person-

al knowledge or preconceived notions as to the case was not relevant. There is no authority to suggest that a defendant's witnesses in a venue challenge must be able to address the ability of the individual members of the venire to provide a fair trial, and we believe such a requirement would be impossible to meet.

■ Because the issue had not been joined at the conclusion of the venue hearing, we cannot say Taylor waived his right to the change of venue as a matter of law. We further hold that, under the circumstances of this case, the trial court erred in withholding its decision on the motion until completion of voir dire.

In *Henley v. State*, 576 S.W.2d 66, 71 (Tex.Crim.App.1978), the Texas Court of Criminal Appeals held that the trial court is not precluded from utilizing voir dire to help gauge the community attitudes and opinions concerning a defendant. *See Foster v. State*, 779 S.W.2d 845, 852 (Tex. Crim.App.1989). However, in reaching its decision in *Henley*, the court quoted from *Randle v. State*, 34 Tex.Crim. 43, 28 S.W. 953 (1894), that "[t]he prejudice in the county may be such that jurors will qualify themselves who are not impartial," and noted that, "regardless of the successful qualification of a jury panel, *the evidence adduced during the pretrial hearing on the venue motion may dictate that a change of venue be granted* in order to assure the accused a fair and impartial trial." *Henley*, 576 S.W.2d at 71 (emphasis added). The court further cautioned against using the successful qualification of a jury panel as the *sole* criterion in determining whether a defendant is entitled to a change of venue and concluded that:

Appellant was entitled to a change of venue if he could show, *even though it would be possible to select a jury whose members were not subject to a challenge for cause,* that there were influences in the community which could affect the answers on voir dire, or the testimony of witnesses at trial or that for any other reason a fair and impartial trial could not be had in Bexar County.

*Id.* at 72 (emphasis added).

It is apparent from the record that the trial court based its denial of Taylor's motion solely on the successful qualification of a jury panel. This failed to comport with statutory procedure. *See Silva v. State*, 64 S.W.3d 430, 433 (Tex.App.-San Antonio 2001, no pet. h.) (holding when issue as to propriety of venue is raised under Articles 31.03 and 31.04, it is to be resolved only after pretrial evidentiary hearing, and that failure to do so is error).

In the instant case, the only evidence the trial court heard at the hearing on Taylor's motion dictated that a change of venue be granted. The qualification of a jury panel was the *sole* criterion in determining Taylor was not entitled to a change of venue. However, because the State filed no controverting affidavits and presented no evidence at the hearing, Taylor remained entitled to a change of venue as a matter of law, no matter what the veniremembers said during voir dire. *Lundstrom*, 742 S.W.2d at 284. The selection of an unbiased jury is insufficient to satisfy the state's burden to join issue with a motion for change of venue. *Fields v. State*, 627 S.W.2d 714, 719 (Tex.Crim.App. 1982). At the end of voir dire, the State still had not attacked the credibility of the persons making the affidavits attached to Taylor's motion, or their means of knowledge. As such, Taylor was entitled to a change of venue as a matter of law and it was error for the trial court to deny his motion.

■ Taylor's right to a fair trial by an impartial jury is of constitutional dimension, and the question of change of venue

certainly implicated his constitutional rights. *See Adami v. State*, 524 S.W.2d 693, 703 (Tex.Crim.App.1975); *Silva*, 64 S.W.3d at 433. If the appellate record in a criminal case reveals constitutional error that is subject to the harmless error review, we must reverse a judgment of conviction or punishment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a).

The record on appeal reveals that, in the words of the court, "numerous" jurors were excused for cause, that Taylor used all ten of his strikes, and that the State cut its peremptory strikes from ten to six in order to be able to empanel a jury from the venire. The record of the voir dire indicates most members of the empaneled jury knew Taylor and had knowledge of his alleged crimes from various sources, including conversations with neighbors and publicity in newspaper reports.

We also recognize the reality that jury selection for a shocking trial of a local schoolteacher, for possession of child pornography, in a rural community, raises substantial problems in jury selection that are not present in a large, metropolitan area with a large population and the concomitantly larger and more diverse (and uninformed) jury pool.

We have also reviewed the voir dire. It reflects the expected mix of individuals admitting knowledge and predetermined notions about the outcome of the trial, as well as knowledge of the publicity the trial had already received. Under these facts as shown by the record, we cannot conclude beyond a reasonable doubt the error

did not contribute either to conviction or punishment.

### Brady Violations

Taylor next contends the prosecutor failed to disclose exculpatory evidence material to the defense. He contends that: 1) Marshall's handling of the copy of the information on Taylor's hard drive, the key physical evidence in the case, was defective, and that Taylor's hard drive was copied to a "contaminated" hard drive from the Internet Bureau's child pornography general files, which may have already contained pornographic data; and 2) the State failed to provide the defense with a copy of Taylor's hard drive and a copy of the hard drive to which Taylor's hard drive was copied.

Before trial, the trial court issued its standard discovery order requiring the State to produce to the defense all physical evidence that would be offered at trial and explicitly required that all exculpatory evidence known to the prosecutor be produced in accordance with the *Brady* rule. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution is violated when a prosecutor fails to disclose evidence favorable to the accused that creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Crim.App. 1992).[8] In order to establish a due process violation under *Brady*, a defendant must show: 1) evidence was suppressed; 2) the suppressed evidence was favorable to the defense; and 3) the suppressed evidence

---

8. The *Thomas* case presents an analysis of the applicable caselaw, including *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Material evidence favorable to the defense, which the prosecutor is required under this rule of law to disclose is referred to as *"Brady* material."

was material to either guilt or punishment. *United States v. Runyan,* 290 F.3d 223, 245 (5th Cir.2002); *Thomas,* 841 S.W.2d at 404; *Buckley v. State,* 46 S.W.3d 333, 339 (Tex.App.-Texarkana 2001, pet. dism'd, untimely filed). Favorable evidence includes both exculpatory and impeachment evidence. *Thomas,* 841 S.W.2d at 404.

The second requirement of *Brady* is certainly present. The testimony clearly shows that Marshall made several errors in following required procedure for copying the subject hard drive to a "forensic" hard drive, and also that he did so without "wiping" the disk onto which the material was copied (an in-house disk used in pornography investigations). Marshall admitted that the drive was one used in-house for pornography investigations and that it could have already contained pornographic material. This was certainly at least impeachment evidence favoring the defense.

■ However, the State contends the first required element of *Brady* is missing because Taylor failed to show the information was "suppressed." This first element of *Brady* is present if the prosecution actively suppresses evidence or negligently fails to disclose it. *Baker v. State,* 887 S.W.2d 227, 228 (Tex.App.-Texarkana 1994, no pet.).

■ In *Runyan,* a child pornography case, the appellant contended the government had violated *Brady* by denying him access to a computer owned by a defense witness in the case, which would have allegedly contained exculpatory information. The Fifth Circuit found no *Brady* violation; the computer was available at trial, and the defense had full access to the computer and its contents during trial. The government is not required to facilitate the compilation of exculpatory material that could have been compiled by the defense. Thus, without suppression, there was no *Brady* violation. *Runyan,* 290

F.3d at 244, 245–46. There is no *Brady* violation if it is not shown that the defendant was denied access to the allegedly favorable material. *Staten v. State,* 919 S.W.2d 493, 498 (Tex.App.-Fort Worth 1996, pet. ref'd). If the defense has the opportunity to cross-examine concerning the allegedly exculpatory material and there is no showing the defense would have pursued a different trial strategy if he or she had known this information sooner, no *Brady* violation is shown. *Williams v. State,* 995 S.W.2d 754, 761–62 (Tex.App.-San Antonio 1999, no pet.). Further, the prosecutor is not required to furnish the defendant with exculpatory and mitigating evidence which is equally and fully accessible to the defense. *Flores v. State,* 940 S.W.2d 189, 191 (Tex.App.-San Antonio 1996, no pet.).

■ The record shows that the En-Case report, from which Taylor's expert was able to determine error had been made, was furnished to defense counsel five days before the date testimony commenced. In its opening statement, the State acknowledged errors had been made. Marshall admitted on direct examination he had made mistakes transferring the data from Taylor's computer. Specifically, before copying the drive, Marshall executed a format command against Taylor's drive, when he should have formatted the target drive. By doing so, he destroyed the file allocation table for Taylor's computer and there was no structure in place for the files which were copied. Defense counsel extensively cross-examined Marshall about his errors.

However, the record contains a report from John Hinds, an analyst who assisted Marshall. The report pointed out these errors in detail. That report was produced four months before trial. Thus, Taylor was made aware at an appropriate

time of the critical mistakes made by Marshall in his attempt to copy the contents of the hard drive, and no *Brady* violation is evident.

 That is not, however, the conclusion of Taylor's argument, but is instead its beginning. Taylor complains strenuously because he was never informed Marshall had copied the hard drive (without the file structure), not onto a clean or newly-wiped hard drive, but instead onto a hard drive the State had used in previous pornography investigations—and which the State admitted could therefore have contained images from previous investigations.

The State has no response to this contention, except to argue in a single sentence that the matter was fully explored at trial. The State cites *Runyan*, 290 F.3d 223, for the proposition that, if information is fully available at the time of trial, then a *Brady* violation is not shown. That argument ignores the second facet of that proposition: that the only reason for not obtaining the evidence is defense counsel's lack of reasonable diligence. It is clear the State informed Taylor about the problems with the file transfer. It is equally clear the State did not inform Taylor about its failure to wipe the target disk and the resultant possibility that extraneous photographs could be on the target disk.

After this fact became apparent at trial, counsel elicited evidence about whether extant files on the hard drive could be clearly differentiated from files added by the copying process. That evidence is conflicting. The testimony seems to agree that, if the officers had not initially made the mistake of formatting Taylor's drive and destroying the file allocation structure before copying the drive, it would be clear which portions of the copied files came from Taylor's machine. However, because in this case the State destroyed the file allocation structure, the testimony indicates there is a probability that any given file might have already been on the disk before the copying process occurred.

The errors in copying were disclosed in a timely fashion, and *Brady* is not implicated as to that matter standing alone. However, the error in failing to first wipe the target disk was not revealed, and that knowledge is critical to any analysis of the importance of the errors in copying, as well as to any attempt to determine whether the photographs were on Taylor's hard drive, or were left over from prior pornography prosecutions.

 The entirety of the conviction is based on those photographs. *Brady* requires a showing that the evidence was suppressed, that the suppressed evidence was favorable to the defense and material to either guilt or punishment—and creates a probability sufficient to undermine confidence in the outcome of the proceeding.

 The evidence was clearly suppressed. The first prong has been met. The second prong requires a showing the evidence was favorable. Favorable evidence is any evidence that "if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Favorable evidence includes both exculpatory and impeachment evidence. The nondisclosed evidence tends to impeach the testimony of the expert witness on whom the State relied to convict and is thus exculpatory in nature. Exculpatory evidence is evidence which tends to justify, excuse, or clear the defendant from alleged fault or guilt. *Thomas*, 841 S.W.2d at 404. Impeachment evidence is that evidence offered "to dispute, disparage, deny, or contradict. . . ." *Id., quoting* BLACK's LAW DICTIONARY 566 (5th ed.1990). Further, this evidence goes to a matter the State was

required to prove: that the pictures were actually on Taylor's computer drive. If disclosed and used effectively, proof that they were not on his computer would necessarily have resulted in an acquittal. Therefore, the evidence was favorable, and the second part of the test has been satisfied.

The third prong of the test requires us to determine whether the evidence was material, i.e., created a probability sufficient to undermine confidence in the outcome of the proceeding. To make this determination, we must examine the alleged error in the context of the entire record. *Id.; see Bagley,* 473 U.S. at 683, 105 S.Ct. 3375; *see also United States v. Agurs,* 427 U.S. 97, 113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

We are required to examine the error in context of the overall strength of the State's case. *See Thomas,* 841 S.W.2d at 405. The *Thomas* court referred to the analysis used by the United States Supreme Court in *Agurs* to supply the form of that analysis. The *Agurs* opinion states:

> If ... one of only two eyewitnesses to a crime had told the prosecutor that the defendant was definitely not its perpetrator and if this statement was not disclosed to the defense, no court would hesitate to reverse a conviction resting on the testimony of the other eyewitness. But if there were fifty eyewitnesses, forty-nine of whom identified the defendant, and the prosecutor neglected to reveal that the other, who was without his badly needed glasses on the misty evening of the crime, had said that the criminal looked something like the defendant but he could not be sure as he had only had a brief glimpse, the result might well be different.

*Agurs,* 427 U.S. at 113, 96 S.Ct. 2392.

■ Therefore, a verdict that is only weakly supported by the record is more likely to be affected by the prosecutorial error than a verdict which is strongly supported. *Strickland v. Washington,* 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Further,

> the reviewing court may consider directly any adverse effect that the prosecutor's [nondisclosure] might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's [failure to disclose].

*Bagley,* 473 U.S. at 683, 105 S.Ct. 3375.

■ With this in mind, we recognize that the State relied exclusively on the photographic images obtained from the copying process to implicate Taylor as the possessor of those photographs. Although Taylor provided a statement saying he had at times viewed and downloaded photographs on the internet, he was not convicted of generally viewing or purchasing photographs, whether lewd or otherwise. He was convicted of possessing nine specific photographs. There is no other evidence to show these photographs were actually contained on his computer. The State's case, therefore, rested on those photographs exclusively and on the credibility of the witness who copied Taylor's computer drive that allegedly contained those photographs. This evidence, which tends both to exculpate Taylor and to impeach the State's witness' testimony, went to the very heart of the State's case and involves

the only means used to present that evidence.[9]

■ Despite the problems set out above and the untimely exposure of those problems to counsel, as well as the obvious expense of proceeding to the brink of trial and then stopping to regroup, and the expense to the defendant of bringing an expert witness in for trial, courts have held there is yet another way that complaints about *Brady* violations may come to naught. Long-standing caselaw indicates that, when previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. *Williams*, 995 S.W.2d at 762; *Losoya v. State*, 636 S.W.2d 566, 571 (Tex.App.-San Antonio 1982, no pet.). The failure to request a continuance waives any *Brady* violation, as well as any violation of a discovery order. *Williams*, 995 S.W.2d at 762; *see Lindley v. State*, 635 S.W.2d 541, 544 (Tex.Crim.App. [Panel Op.] 1982); *Yates v. State*, 941 S.W.2d 357, 364 (Tex. App.-Waco 1997, pet. ref'd); *Losoya*, 636 S.W.2d at 571.

■ This reasoning is taken from Texas Court of Criminal Appeals cases which used that reasoning in the context of police reports or favorable witness statements, which are an express exception to the discovery rule. TEX.CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp.2002).[10] Since that time, they have been applied to any situation where surprise is claimed, without consideration of other factors that show the basic unfairness of allowing the state to take a case to trial without revealing basic exculpatory evidence. This case

highlights those factors. Most notably, Taylor was not indigent, and the State was not paying for his defense or for his expert witness. Further, the State does not suggest it was unaware of the evidence, but claims instead it thought it was not of importance and chose not to provide it to the defense.

Nevertheless, we are confronted with the basic fact that counsel did not, when he was finally informed of the evidence, ask the trial court for a continuance. Under the authority cited above, we have no choice but to find the *Brady* claims were waived.

### Discovery Error

■ Taylor also contends the trial court's refusal to order the State to provide him with a complete copy of the hard drive as "material physical evidence" for inspection requires reversal. The State took the position that the electronic images were pornographic, and thus contraband, and that it could not therefore provide him with a complete copy of the hard drive which included the copies. Mere inspection of the images or even of the EnCase report is not the same as an inspection of the drive itself (or an exact copy thereof). It is certainly not the same as an independent forensic examination of the contents of the hard drive by an expert.

■ A drug defendant has the right to have an independent chemist review the "contraband" in the presence of a representative of the state to determine its chemical makeup. *Mendoza v. State*, 583 S.W.2d 396, 398 (Tex.Crim.App. [Panel

**9.** *See Bowen v. Maynard*, 799 F.2d 593, 610 (10th Cir.1986); *Lindsey v. King*, 769 F.2d 1034 (5th Cir.1985); *United States ex rel. Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985).

**10.** *Rodriguez v. State*, 597 S.W.2d 917, 919 (Tex.Crim.App.1980), *vacated & remanded on other grounds*, 453 U.S. 906, 101 S.Ct. 3137, 69 L.Ed.2d 991 (1981); *Payne v. State*, 516 S.W.2d 675, 677 (Tex.Crim.App.1974); *Yates v. State*, 941 S.W.2d 357, 364 (Tex.App.-Waco 1997, pet. ref'd).

Op.] 1979); *see* TEX.CODE CRIM. PROC. ANN. art. 39.14. It is no different in this instance to require the State to produce its evidence, i.e., the hard drive, for independent review, subject to the State's right to have a representative present. Accordingly, at the very least, an exact copy of the duplicate of Taylor's hard drive should have been produced for review by an expert of Taylor's choosing, in the presence of a representative of the State.

In so holding, we disagree with the State's position that such a review must be conducted at a State-controlled facility. We would not require a chemist to take a "porta-lab" with him or her into an evidence room to check alleged contraband drugs, and it is not appropriate to require a computer expert to carry his or her equipment into a State facility to review the documents. Under some circumstances, such as in this case where the accuracy of the copy itself is at issue, on timely request the duplicate and the original hard drive should both be produced for independent examination. The failure to produce the requested materials for independent review by defense counsel or his expert was error.

■ If the appellate record in a criminal case reveals nonconstitutional error that is subject to review under TEX. R.APP. P. 44.2(b), we do not reverse a judgment of conviction or punishment unless we determine the error is such that it affects the substantial rights of the defendant. In order to properly conduct a harm analysis under Rule 44.2(b), we are to determine whether the error affected a substantial right of the defendant. The Texas Court of Criminal Appeals has opined that, in order to make this determination, we must decide whether the error had a substantial or injurious effect on the jury's verdict. *Llamas v. State*, 12 S.W.3d 469, 471 n. 2 (Tex.Crim.App.2000).

■ If concrete data necessary to conduct a harm analysis is absent, we must nevertheless conduct the test, and the absence of information is simply taken into account in determining whether the harmless error test was passed or failed. *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim. App.1997). This means some errors will not be proven harmless because harm can never be determined due to lack of information needed for analysis. *Llamas*, 12 S.W.3d 469.

■ In so doing, we must assess harm, but there is no burden on either the appellant or on the state to demonstrate that harm. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex.Crim.App.2001); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App.2001). The parties may suggest how such harm is shown (or not), but no presumptions or allocated burdens of proof may exist. *Johnson*, 43 S.W.3d at 4.

■ In considering harm, the entire record must be reviewed to determine whether the error had more than a slight influence on the verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997), *citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Reeves v. State*, 969 S.W.2d 471, 491 (Tex.App.-Waco 1998, pet. ref'd). If the court finds the error did have more than a slight influence on the verdict, it must be concluded the error affected the defendant's substantial rights in such a way as to require a new trial. *Johnson*, 43 S.W.3d at 4; *Reeves*, 969 S.W.2d at 491. If the court has grave doubts about the error's affect on the outcome, the case must be remanded for a new trial. *Johnson*, 43 S.W.3d at 4. Otherwise, the court should disregard the error. *Id.; Lopez v. State*, 990 S.W.2d 770, 778 (Tex.App.-Austin 1999, no pet.).

The contents of the hard drive were necessarily the central issue in this trial. The failure to order a copy of the hard drive produced, after request by counsel, had several results. Most importantly, defense counsel had no opportunity to discover for himself the errors referenced above. Those errors had the potential to be of critical importance to Taylor's defense, but without the opportunity to examine those errors in a less haphazard manner than the "on-the-fly" efforts made on cross-examination, we do not have sufficient information for more than an analysis of probabilities, rather than facts.

The failure to provide a copy of the hard drive also meant counsel did not have a copy of the photographs which the State alleged to be pornographic, which necessarily impacted his ability to prepare a defense to the claim.

Cocaine can be analyzed, and the result conclusively shows whether the substance is contraband. That is not the case with photographs that may or may not be lewd. That is most clearly shown by the fact that we must conclude the jury decided one of the photographs was not pornographic. Counsel should have been provided with the information requested.

We conclude that under these facts this error had a substantial or injurious effect on the jury's verdict.

### The Story

Taylor also contends the trial court erred by allowing a "story" found in Taylor's residence to be admitted into evidence. The "story" was found on a floppy disk at Taylor's home and is a despicable (and lengthy) sexual narrative extolling the joys of sex enjoyed by men and women with both willing and unwilling young girls. It is extremely graphic and provides detailed descriptions of an infinite variety of sexual activity.

Counsel objected strenuously when the evidence was introduced, initially because the story was not relevant in any respect to a prosecution for possession of photographs, and then further argued the story was "highly prejudicial" with no purpose other than to "inflame the jury." The State, in its response to the objection, addressed both the relevancy argument and counsel's argument about undue prejudice.

 On appeal, the State argues the prejudice versus probative value argument was not preserved for review because counsel did not refer the court to TEX.R. EVID. 403. It is not necessary for counsel to specify the rule under which he is complaining, but only to so frame his objection so that it may be clearly understood by the trial court. *See Anderson v. State*, 817 S.W.2d 69, 73 n. 4 (Tex.Crim.App.1991). An objection is sufficient to preserve error for appellate review if the objection communicates to the trial court what the objecting party wants, why the objecting party thinks himself or herself entitled to relief, and does so in a manner clear enough for the court to understand the objection and request at a time when the court is in a position to do something about it. *See Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim.App.1992).

It is clear, both from counsel's argument and from the court's statements, that the objection was understood on both grounds. The complaint was therefore preserved for appellate review.

 The first question is whether the story was relevant to this prosecution. TEX.R. EVID. 401 provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

 This is limited by Rule 404, which provides that evidence of other acts is not admissible to prove a person's character in order to show that he or she acted in conformity with his or her character. *See* TEX.R. EVID. 404. The purpose of the rule is to avoid tempting a jury to convict a person for being a "bad person" generally and to require conviction on the particular alleged offense. The built-in exception provides that the evidence is nevertheless admissible if it is relevant for some other purpose, such as to show motive, knowledge, intent, etc.

The State contends the story is relevant to show knowledge by Taylor that the pictures were on his hard drive and that they were not there by accident; and that it makes it less likely that possession of the photographs was an accident when the person was also downloading narratives that involved sexual contact between adults and minors, citing *United States v. Grimes*, 244 F.3d 375 (5th Cir.2001). Both Taylor and the State refer to *Grimes* as supportive of their position.

In *Grimes*, a child pornography case, the Fifth Circuit found that a similar story found in a computer was admissible as relevant to show that Grimes knew the photographs were of minors, that he knowingly possessed the images, that it was Grimes instead of another family member who possessed the photographs, and that the possession was likely not an accident when the person was also downloading narratives involving sexual contact between adults and minors. *Id.* at 384 n. 18.

The points similar in this case to *Grimes* are the "accident" and "knowledge" considerations. As in *Grimes*, the story certainly supports those two matters, and thus the court correctly concluded it was relevant and admissible for reasons other than to show Taylor was acting in conformity with his character.

At this juncture, however, the State urges this Court to abandon *Grimes*, because the Fifth Circuit then reviewed the story and concluded unequivocally it was unduly prejudicial and inadmissible. It described the narratives as vile in their graphic and violent nature, and concluded the probative value was substantially outweighed by the danger of unfair prejudice.

 We now turn to the question of whether this evidence was inadmissible because it is evidence of such a nature that its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403. This objection requires the trial court to engage in a balancing process, that is, to weigh the probative value of the evidence against its tendency to suggest a decision on an improper basis. Appellate review is on an abuse of discretion standard. Rule 403 carries with it a presumption that the evidence will be more probative than prejudicial. *Tennison v. State*, 969 S.W.2d 578, 580 (Tex.App.-Texarkana 1998, no pet.). In order to be unfairly prejudicial, the proffered evidence must have a tendency to suggest a decision on an improper basis. *Perkins v. State*, 902 S.W.2d 88, 99 (Tex.App.-El Paso), *supplemented by*, 905 S.W.2d 452 (Tex.App.-El Paso 1995, pet. ref'd).

 In conducting the balancing test required by Rule 403, the trial court must assess the inherent tendency, if any, of the evidence to encourage resolution of material issues on an improper basis, and then must balance against that inherent tendency the host of factors affecting probativeness. *Richardson v. State*, 879 S.W.2d 874, 880–81 (Tex.Crim.App.1993); *Fuller v. State*, 829 S.W.2d 191, 206 (Tex. Crim.App.1992). An appellate court reviewing the trial court's decision may reverse it only for an abuse of discretion, i.e.,

only when the trial court's decision was outside the zone of reasonable disagreement. *Richardson,* 879 S.W.2d at 881; *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

 Those criteria include the following factors: (1) how compellingly the evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence; (2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; (3) the time the proponent will need to develop the evidence; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, which breaks down into three subparts: (a) Does the proponent have other available evidence to establish the fact of consequence that the evidence is relevant to show? (b) How strong is that other evidence? and (c) Is the fact of consequence related to an issue that is in dispute? *See Montgomery,* 810 S.W.2d at 389–90; *Manning v. State,* 84 S.W.3d 15, at 21–22 (Tex.App.-Texarkana 2002, no pet. h.).

In this case, factors one and two are indelibly linked. The explicit and offensive nature of the story obviously makes the State's case that the photographs were lewd much stronger, especially in light of the relatively innocuous posing of the children in the photographs. The very nature of the story, however, also fits this situation firmly within the *Grimes* description for a factor two analysis. Once read by the jury, this is not the type of evidence that could be filed away in some compartment of the mind and considered for only a limited purpose, even if the trial court ordered the jury to do just that. The potential the evidence has to "impress the jury in some irrational but nevertheless indelible way" is so far beyond any typical situation that it is impossible to see any way in which its misuse could be corrected.

Factor three: The time involved was short.

Factor four: Did the State need the evidence to prove a matter in dispute? The story makes it more likely that Taylor used the photographs to satisfy his prurient interests. It does not (or at least should not) affect the jury's determination of whether the photographs were actually lewd, which is what the State was required to prove. The State used the story to buttress its argument that the photographs were actually lewd because, surely if Taylor enjoyed such deplorable writing, the photographs are similarly deplorable. The State argues on appeal it could also have used the story to buttress its position that the photographs were intentionally placed on the computer rather than accidentally pulled up into a temporary file, which was one of the defensive arguments made by Taylor's counsel.

The only one of these arguments that is legitimate is the last one, and that is the one that could most easily have been shown by a proper forensic evaluation of the hard drive of Taylor's computer.

Because of its ultimate and extreme inflammatory nature, the prejudice caused by its admission, i.e., the likelihood that the jury would use it improperly, outweighed its probative value. The inflammatory nature of this type of evidence—a story about the rape of many children by a number of adults in graphic detail—is so extreme that no conceivable instruction would have been sufficient to keep the jury from considering it when it was determining Taylor's guilt for an offense that involved photographs of nude children. This is most certainly the case in light of the fact that the critical question was whether the photographs were lewd, and Taylor's main defensive argument was that they

were not lewd. The question was not whether Taylor was using them for lewd purposes or whether Taylor considered them lewd. The question was whether the photographs *were* lewd. Ultimately, this evidence was such as to encourage resolution of material issues on an emotional and improper basis rather than on the basis of the evidence on which the allegations of wrongdoing were grounded.

The trial court abused its discretion by allowing this story into evidence. When such evidence is presented to a jury, for the reasons set out in detail above, it necessarily must fall within the harm parameters set out by TEX.R.APP. P. 44.2 as an error affecting the substantial rights of the accused to a fair trial.[11]

### Hearsay and Ineffective Assistance of Counsel

Taylor further contends in two related points of error that the trial court erred by admitting hearsay testimony and also that, if we conclude the trial objection was inadequate, he received ineffective assistance of counsel.

Taylor's hearsay complaints concern: 1) the accuracy of the copying procedure that provided a predicate to the admission of the photographs; and 2) allegations that Taylor had at times in the past purchased child pornography from Landslide (not resulting in the purchase of these photographs).

■ As previously discussed at length, Marshall testified he had copied Taylor's hard drive. He testified the portions of the target hard drive containing the copy made of Taylor's hard drive by the EnCase program were identical. He based his testimony on his observation of two hash marks on his computer screen at the time the copying process was completed—the acquisition hash and the verification hash. Marshall made no recording of this in any form, although the EnCase software provides a verification process that would have provided written documentation of the quality of the copying procedure.

The initial question is whether information observed on a computer screen, generated not by a human source but setting out the results of a computer program in analyzing data, is hearsay. Rule 801 defines a "statement" as an oral or written verbal expression, or as the nonverbal conduct of a person if intended by the person as a substitute for verbal expression. TEX.R. EVID. 801(a). Arguably, this should constitute such a statement. When the rules were written, computers were not capable of performing such analysis and at most would have provided raw data which would have to be analyzed by a human. Now, the computer program performs the analysis and a human only looks to see what result the program has reached. If the result shown is not the one desired, the human does not perform an independent analysis, but looks for different ways to apply the program to the problem. Under this scenario, there is arguably a statement being made—just not by a human—but by an artificial intelligence.

Without going into the details of this type of analysis, however, as pointed out by the State, several courts of appeals have held that computer-generated information, whether on a display or paper, is simply not hearsay because it falls outside the strict language of the rule. This position is defensible and is apparently the

11. The exhibit is fronted by a sheet of paper which, in magic marker, is titled as "Clayton Taylor's Story." That titling in itself does not accurately reflect the evidence. There is absolutely nothing to suggest that it is his story. It is something he possessed, not something he wrote. The evidence shows the story was taken from the internet.

sole position taken in Texas to date for materials not input into a computer and simply printed out, but that result from analysis done by the computer.[12] The statement by Marshall was not hearsay.

■ Taylor next contends the trial court erred by allowing information that purported to be portions of the business records of Landslide into evidence.[13] The State offered testimony by Steve Nelson to show Taylor had either ordered or subscribed to an internet service that provided child pornography. It became clear at trial that the time frame for these alleged purchases was before 2000 and that Taylor had purchased a new computer since that date. The State made no effort to show or suggest the pictures at bar were purchased from that service.

The accounting and transaction records of Landslide were obtained by the State as the result of a two-year investigation of the company. Nelson was the officer who had managed the Landslide investigation and was the person who had reviewed the database during the investigation. The State argues on appeal that these constitute summaries of business records and were therefore admissible. This argument was never made at trial. The State introduced the evidence, not as summaries, but as the business records themselves. Taylor's counsel objected to the introduction of the records because they were not made available pursuant to the general discovery order covering the trial.

> I'm going to object, Your Honor. He's trying to prove up business records, hearsay records that we don't have. We haven't seen them. This goes to our discovery motion. I'm going to object to this whole line of questioning.

The trial court overruled the objection.

Testimony continued, and counsel then objected due to a lack of personal knowledge by the witness about the records at issue. After a brief voir dire of the witness, counsel restated his second objection as follows:

> I object, Your Honor. There was no personal knowledge. This person was not present. This person does not know anybody that was—at the time these records were made, he doesn't know anybody that was—he wasn't present. He knew nothing about it, how they were kept, who they were kept by, or what was going on. There is no way that this person can prove up that as a business record, and I object to it as hearsay.

On appeal, Taylor first contends the evidence was inadmissible as a business record because the information was actually a collection of excerpts prepared by Nelson from Landslide's records. This is a more carefully phrased version of the objection made at trial and adequately comports with that objection to preserve the claim for review.

We have reviewed the records. They are not the business records of Landslide; they are portions of those records which were collated and excerpted by Nelson. They were never tendered as "summaries," but as the records themselves. It is clear from the discussion above they are not the business records of the company.

**12.** *Stevenson v. State,* 920 S.W.2d 342, 343 (Tex.App.-Dallas 1996, no pet.); *Ly v. State,* 908 S.W.2d 598, 600 (Tex.App.-Houston [1st Dist.] 1995, no pet.); *Smith v. State,* 866 S.W.2d 731, 732 (Tex.App.-Houston [14th Dist.] 1993, no pet.); *Burleson v. State,* 802 S.W.2d 429, 439–40 (Tex.App.-Fort Worth 1991, pet. ref'd).

**13.** Landslide was not itself a pornography site. It was a service that verified credit card information for a number of websites that provided pictures for viewing.

The trial court thus abused its discretion by allowing them to be admitted into evidence.

The contention of error is sustained.

██ We now look to see whether this error is such that it affected the substantial rights of the accused. *See* Tex.R.App. P. 44.2(b). In making that determination, we apply the standards set out above. We have recognized that the photographs are in no way linked to any purchases through Landslide. The evidence was used by the State as support for its position that the photographs were pornographic, based not on the photographs, but on the fact Taylor had engaged in purchases of unknown, but presumably pornographic (according to the statutory definition) images at a prior time. That evidence provided no direct proof that Taylor committed the crime alleged in this case, but was used by the State to show that the photographs on his hard drive were there intentionally and not as a result of some mistake or accidental surfing of the internet.

There is no question this improperly admitted evidence is such that it added to the strength of the State's case. We find the error did have more than a slight influence on the verdict, and we therefore conclude the error affected Taylor's substantial rights in such a way as to require a new trial. *See Johnson,* 43 S.W.3d at 4.

### *The Picture Book: "The Age of Innocence"*

██ Taylor finally contends the trial court committed reversible error by refusing to permit him to introduce a collection of photographs entitled, "The Age of Innocence." He argues that, because the question before the jury was whether the photographs at bar were lewd,[14] he should be able to provide photographs contained in an art book, which would provide the jury with some information from which it could make an intelligent determination of whether the photographs at bar were lewd, for some reason other than because this defendant read stories about sex involving children. He points out that during voir dire the State suggested that pictures of nude children by anyone except a parent raised "questions about the intent" and thus that the question about whether a

14. The Dallas court discussed the meaning of the term lewd in the following excerpt from *Alexander v. State,* 906 S.W.2d 107, 110 (Tex. App.-Dallas 1995, no pet.). The court concluded, however, that it was not necessary to provide any portion of this information to a jury. Its analysis follows.

> Under the federal statute, to determine whether a visual depiction of a child constitutes a lewd or lascivious exhibition of genitals, federal courts consider whether: (1) the focal point of the visual depiction is the child's genitalia; (2) the place or pose of the child in the photograph is sexually suggestive; (3) the child is depicted in an unnatural pose or inappropriate attire; (4) the child is fully or partially clothed or nude; (5) the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; or (6) the visual depiction is intended or designed to elicit a sexual response in the viewer. Several federal

courts have recognized that a photograph is lascivious when "the photographer array[s] it to suit his particular lust," noting that "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles."

> We find the reasoning of the federal decisions persuasive and, thus, adopt their interpretations of "lewd" or "lascivious" exhibition of genitals for purposes of the Texas statute. We conclude that when a child is the subject of a photograph, lewdness is not to be considered as a characteristic of the child, but rather as a characteristic of the photograph itself. Moreover, we conclude that whether the content of a photograph constitutes a lewd or lascivious exhibition of a child's genitals depends on the intent of the photographer.

(Citations omitted.)

picture constituted child pornography was not based on the photograph, but on who possessed it.

In short, Taylor argues the book should have been admitted into evidence because the photographs he had in his possession were in no substantive way different from the pictures found in that book.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App. 1996); *Montgomery,* 810 S.W.2d at 379–80. We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 102; *Montgomery,* 810 S.W.2d at 391.

Under the definition of relevance set out earlier, there is no question the evidence could have been useful to aid the jury in determining the critical matter at issue: whether the photographs were lewd. However, that is only the case if some court, somewhere, had found the photographs in the art book were or were not lewd. The fact the book is readily available at a local bookstore, or that it is sold worldwide by one of the world's largest retailers without suffering criminal conviction, does not necessarily answer that question, although it may suggest that a large number of people do not believe such photographs are lewd.

The State suggests that allowing admission of such evidence would lead to a competition between prosecution and defense, with both sides being allowed to put on evidence of photographs that have or have not been found lewd. That is not a bad thing, and we know that a trial court would be able to restrict the quantity of such examples to a reasonable level.

We trust juries to reach conclusions that impact the lives of parties. They should be given the tools necessary to reach such conclusions. We trust trial courts not to waste too much time in providing those tools, but when the language of a statute uses terms that are subject to interpretation, the jury should be provided with necessary information to allow it to make an intelligent interpretation rather than being required to decide guilt based on uninformed conjecture about the meaning of the words of a statute.

Nevertheless, we believe that the decision about whether to admit this book into evidence falls within the zone of discretion for the trial court and that the court could reasonably decide the photographs would not be sufficiently helpful to require admission into evidence. *See Montgomery,* 810 S.W.2d at 391. This point of error is overruled.

Based on the errors set out above, we reverse the conviction and remand the case for a change of venue and new trial.