

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00290-CR

JOSE PERALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 147th District Court
Travis County, Texas
Trial Court No. D-1-DC-12-904042, Honorable Clifford Brown, Presiding

September 5, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Jose Perales appeals his conviction for aggravated assault. His sole issue concerns the trial court's refusal to grant him a mistrial due to a purported *Brady*[1] violation. We affirm.

### Background

The dispute evolved around a conversation or interview conducted by the investigating detective. He was interviewing the mother (Suzie Rodriguez) of one of the

---

[1] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct.1194,10 L.Ed.2d 215 (1963).

potential witnesses to the assault.[2]  That interview was recorded and transferred on to a "data disk."  Furthermore, the recording allegedly contained a statement by the detective informing Ms. Rodriguez that it was not his intent to prosecute her son.  The statement was not included in the detective's written report.  And, appellant's trial counsel represented that he had not been aware of that conversation or alleged utterance until the trial had begun and the detective was undergoing cross-examination.  Consequently, appellant argued that the evidence was *Brady* material withheld by the State.  This resulted in him orally moving for a continuance and a mistrial.  A several-hour postponement in the trial was afforded counsel so that he could communicate with Rodriguez.  However, a mistrial was denied him.

### *Analysis[3]*

Whether a trial court errs in denying a mistrial depends on whether it abused its discretion.  *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App.1999).  It abuses its discretion when its decision falls outside the zone of reasonable disagreement.  *Murray v. State*, 172 S.W.3d 782 (Tex. App.–Amarillo 2005, no pet.).

Next, per *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State is obligated to disclose to a defendant exculpatory and impeaching evidence in its possession.  *Brady,* 373 U.S. at 87, 83 S.Ct. 1194*; Pena v. State*, 353 S.W.3d 797,

---

[2]The assault consisted of appellant, while driving a vehicle, hitting a person riding a bike and failing to stop thereafter. At least two other persons were in the car, one of whom was the son of Susie Rodriguez.

[3]To the extent that appellant may be contending that the trial court erred in overruling his motion for continuance, we note that the request was orally made.  Being so, it did not comport with the applicable rules of procedure requiring a written motion containing factual allegations attested to by either the State or the defendant.  TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006) (specifying the requirements for a motion to continue in a criminal case).  Thus, appellant failed to take the steps necessary to perfect the matter for review.  *Dewberry v. State,* 4 S.W.3d 735, 755-56 (Tex. Crim. App. 1999) (stating that nothing is preserved for review by an oral motion for continuance).

810 (Tex. Crim. App. 2011). However, the burden lies with the accused or complainant to prove that the duty was not met. *Pitman v. State*, 372 S.W.3d 261, 264 (Tex. App.–Fort Worth 2012, pet. ref'd). This requires him to establish that 1) the State failed to disclose the pertinent evidence, 2) the undisclosed data is exculpatory or susceptible to being used as impeachment evidence favorable to the accused, and 3) the evidence is material. *Pena v. State*, 353 S.W.3d at 809. *Brady*, however, does not require the State to independently seek out exculpatory evidence on behalf of the accused or to furnish him with exculpatory or mitigating evidence that is fully accessible to him from other sources. *Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006). Application of these rules leads us to reject appellant's contention for several reasons.

First, we have not been cited to the location within the appellate record of the "data disk" in question. Nor did our review uncover the location of the disk or a transcription of the interview in question. Without either the disk or a transcription of its contents being admitted or otherwise being made a part of the record, we cannot accurately assess its tenor. In other words, it is rather difficult to say whether evidence constitutes *Brady* material if we cannot see what that evidence is.

Second, counsel for the State represented to the trial court:

> The State - - at this time, I am making the representation as an officer of the Court that I personally had that data disk available for counsel to review and specifically – because in that particular data disk that I reviewed I do not recall Ms. Rodriguez's statement at all. I do not recall reviewing it. But specifically in that data disk we also have David Martinez's second audiotaped conversation, and so that specifically was turned over to Mr. Wannamaker as part of the discovery process.

> I didn't sit down with him and have him – I didn't sit down with him the entire time that he viewed it, but that data disk was turned over to him to review. And if he missed it like I did, that's completely different from saying we were hiding something from them.

3

* * *

And, Judge, again, just to make sure the record is clear, he was given that disk to review as well.

Defense counsel responded with the following:

When I went over to the DA's office*, I requested an opportunity to hear and see disks. They were made available to me* and then I sat at the little cubby station and watched videos. At no time was I given an audiotape or told that there was an audiotape in there of Susie. I had no reason to be looking for it   because it's not in the reports. We have e-mail traffic, we have conversations, we have it on the record my requests for *Brady* and *Giglio* information and they have been very forthcoming about the immunity and the promises made to Fat Face, but not to the Rodriguezes.

 [Emphasis added].

This exchange is quite pertinent because of its relationship to the first element of the burden appellant had to satisfy.  Again, it was his obligation to prove that the State withheld the evidence.  Given the rather factual nature of that element, its establishment depended upon the presence of evidence.  That is, the trial court could hardly find that the State did not disclose the data without some evidence showing that the data was not disclosed.  So, assuming *arguendo* that unsworn comments from an attorney are evidence, *Eckerdt v. Frostex Foods, Inc.,* 802 S.W.2d 70, 71 (Tex. App.–Austin 1990, no writ) (stating that unsworn statements from counsel generally are not evidence), the trial court had before it a scenario likening to what has come to be known as "he said, she said."  And, most importantly, it was free to believe the State's attorney in rejecting the demand for a mistrial.  Simply put, it had evidence before it upon which it could have decided that the alleged *Brady* material was indeed disclosed by the State.  And, we must defer to the trial court's resolution of fact issues.  *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (stating that when issues involve mixed questions

4

of law and fact, we review the issues of law *de novo* but defer to the trial court's determination of historical fact).

Third, the foregoing exchange between the State's attorney and defense counsel is also telling for one other reason. As indicated by that portion of the defense counsel's utterance, he acknowledged that he received disks from the State. That he did not receive "audiotapes" as well is irrelevant since the conversation in question was on a "data *disk.*" (Emphasis added). Thus, he had the means to uncover the evidence about which he complains, and *Brady* is not violated when the exculpatory or mitigating evidence is fully accessible to appellant from other sources. *Harm v. State*, 183 S.W.3d at 407.

Nor is it of import that the State supposedly neglected to direct him to the dialogue between the investigating officer and Suzie. Again, the State's burden is to release *Brady* material to the defendant. We know of no authority obligating the prosecutor to counsel the defendant or his attorney about what within the stack of material provided may or may not be interpreted in some way or another as *Brady* material. Nor did appellant cite us to any such case.[4]

Given that the record before us contained sufficient information upon which the trial court could have held that appellant failed to establish the first element of a *Brady* violation, we cannot say that the refusal to grant a mistrial fell outside the zone of reasonable disagreement. Therefore, the decision was not an instance of abused discretion.

---

[4]*See Taylor v. State,* 93 S.W.3d 487 (Tex. App.–Texarkana 2002, pet ref'd) (finding that the government is not required to facilitate the compilation of exculpatory material that could have been compiled by the defense.)

5

Appellant's issue is overruled, and the judgment is affirmed.


                                                    Brian Quinn
                                                    Chief Justice
Do not publish.