**Mary Jane FLORES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–95–00762–CR.**

Court of Appeals of Texas,
San Antonio.

Dec. 31, 1996.

Edward Camara, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before CHAPA, C.J., and LÓPEZ and HARDBERGER, JJ.

## OPINION

HARDBERGER, Justice.

Mary Jane Flores was indicted for the offense of murder. A Bexar County jury found her guilty as charged and assessed punishment at sixty-seven years confinement in the Institutional Division of the Department of Criminal Justice. We reverse and remand.

### FACTS

During an argument between Flores and her roommate, Debbie Padilla, Padilla was shot and killed with Flores's handgun. They were arguing because Flores had threatened to move out. Flores testified that Padilla shot herself during the argument. Flores stated that Padilla put the gun to her head, and when Flores tried to stop her, the gun went off. Two witnesses arrived at the apartment after the shooting and found Padilla lying on the floor with a bullet wound in her neck. In four points of error, Flores claims that the trial court erred by (1) denying her motion for new trial because the state failed to disclose relevant evidence beneficial to her and because she presented newly discovered evidence; and (2) failing to charge the jury on the lesser included offenses of criminally negligent homicide and manslaughter. We do not reach points of error two through four as we sustain Flores's first point of error.

### SUPPRESSION OF EXCULPATORY EVIDENCE

In her first point of error, Flores argues that the trial court erred in denying her motion for new trial because the prosecution withheld exculpatory evidence. We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim. App.1995); *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim.App.1993). We should not substitute our judgment for that of the

trial court, but should decide only whether the trial court's decision was arbitrary or unreasonable. *Lewis,* 911 S.W.2d at 7.

The evidence Flores claims the prosecution withheld in this case consists of the written and oral statements of one of the witnesses who arrived on the scene shortly after the shooting—Alice Casanova. Casanova lived in the apartment immediately below Flores and Padilla and heard them arguing. Casanova first gave a written statement to the police on the night of the shooting, pertinent portions of which are as follows:

I couldn't tell what they were arguing about but their loud voices told me that they were arguing. I could also hear someone running inside of the apartment. I went to sleep about one fifty. I was asleep, but I heard a loud boom and it woke me up. I also heard some glass breaking. It sounded like a body or something heavy fell on the floor. Me and my boyfriend got out of bed. I went to my sliding patio door and stood there and listened. I heard a girl yelling Debbie why did you do this and why did you do this. She also said I love you and don't leave me. She said these things a couple of times. Then she started yelling for help. I heard her say Debbie wake up and don't leave me. She called her mom. She spoke in Spanish. I heard her say for her mother to come over quickly and that Debbie shot herself and I didn't know why and come over and help me right away. She got off of the phone and just started yelling for someone to help her.... I went upstairs to their apartment and the front door was open. I went in and walked through the living room then I went into the bedroom. I saw that girl on her knees with her hands on Debbie's stomach trying to do CPR. Debbie was laying on her back and she had blood coming out of her mouth, nose and head. There was a lot of blood on her chest.... I could see a black pistol with brown handles. This gun was about 2 to 3 feet from Debbie's right hand. Debbie was laying between the bed and the sliding glass door.

Casanova was also interviewed by a prosecutor at the District Attorney's office on the day before the trial. In her verbal statement to the prosecutor, Casanova related the above facts, but also related more specifics of what she heard Flores say before the loud boom. Casanova told the prosecutor that she heard Flores yelling, "Debbie, what are you doing? Don't do it! Don't do it!" Casanova said Flores just kept saying, "Don't! Don't! No! No!" Casanova told the prosecutor that it was after Flores uttered these words that she heard the body fall. According to Casanova, after the loud boom and the crashing glass, Flores began yelling for help. She was screaming, "Help, Help, Somebody help me. Help me." Casanova told the prosecutor that it was after this that she heard Flores call her mother and tell her that Debbie shot herself. After this conversation with the prosecutor, Casanova was told that she was not needed and could go home, but that she may be called at the end of the trial. She was never called to testify by the prosecution, and the prosecution never told the defense about this witness or this conversation.

Before trial, Flores filed a discovery motion asking the State to produce any exculpatory evidence in its possession. Flores claims that Casanova's statements were evidence that would have been beneficial to her defense, and that the prosecution gave her neither the name of the witness, nor the beneficial evidence prior to trial. The State asserts that Casanova's written statement was in its file and Flores's trial counsel was given an opportunity to review the State's file prior to trial. Flores's trial counsel stated that he was allowed to review the file during docket call, but he did not recall seeing Casanova's written statement in the file.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused violates due process when the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 87, 83 S.Ct. at 1196–97; *see also Thomas v. State,* 841 S.W.2d 399, 404 (Tex.Crim.App.1992). Evidence is material if a reasonable probability

exists that, had it been disclosed, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985); *Harris v. State,* 827 S.W.2d 949, 958 (Tex.Crim.App.), *cert. denied,* 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

■ The prosecution must disclose exculpatory evidence to the defense even if there has been no specific request to do so. *United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 2399–2400, 49 L.Ed.2d 342 (1976); *Palmer v. State,* 902 S.W.2d 561, 563 (Tex. App.—Houston [1st Dist.] 1995, no writ). However, the State is not required to furnish the accused with exculpatory or mitigating evidence that is fully available to the accused. *Jackson v. State,* 552 S.W.2d 798, 804 (Tex. Crim.App.1976), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 799 (1978). An accused may not require the prosecution to obtain evidence for him that is equally available to the accused and the prosecution. *Herrera v. Collins,* 954 F.2d 1029, 1032 (5th Cir.1992), *aff'd,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

The Texas Court of Criminal Appeals has articulated a three-part test to determine if the accused has made out a valid *Brady* claim: (1) the State must suppress or withhold evidence; (2) that is favorable to the accused; and (3) that is material to the defense. *Ex parte Kimes,* 872 S.W.2d 700, 702–03 (Tex.Crim.App.1993). Applying this test to the facts of this case, the most controversy centers around the first element— whether the State suppressed or withheld evidence. Flores argues that the first element is met because the State never told her about the verbal statement Casanova gave the prosecutor on the day before trial and never disclosed the written statement Casanova gave to the police. With regard to the written statement, the State contends in response that it gave Flores's trial counsel an opportunity to review the State's file, which contained a copy of Casanova's written statement at the time. While there is some dis-

pute about the length of time Flores's trial counsel was given to review the State's file and whether the written statement was even in the State's file at the time it was reviewed by the defense, resolution of these matters is not necessary to our decision. Even if Flores's trial counsel had ample opportunity to review the State's file, which contained a copy of the written statement, the fact remains that the State never told the defense about Casanova's verbal statements made on the day before trial. Casanova told the prosecutor more on the day before trial than she told the police in her written statement, and even an exhaustive review of the State's file would not have revealed the additional information learned by the prosecution on the day before trial.

Regarding the verbal statements by Casanova on the day before trial, the State claims that it was not required to disclose this additional information because Flores did not use reasonable diligence to discover the evidence herself. The record reveals that Flores's trial counsel reviewed the State's file, interviewed witnesses, and filed discovery motions. However, the State asserts that because Flores recalled speaking with a woman in her apartment moments after the shooting, reasonable diligence likely would have produced the name of the downstairs neighbor, Casanova. According to the State, it has no obligation to provide Flores with evidence that is fully available to her. It is true that the State is not required to furnish the accused with exculpatory or mitigating evidence that is equally available to the defense. *Jackson,* 552 S.W.2d at 804. However, we cannot agree that the information Casanova communicated to the prosecution on the day before trial was equally or fully available to the defense in this case in the sense envisioned by the court of criminal appeals. The cases in which the court of criminal appeals has barred a defendant's *Brady* claim have involved situations in which the defendants possessed far more knowledge than the defendant in this case. For example, the defendant in *Jackson* failed to state a valid *Brady* claim because the evidence allegedly suppressed was available to the defendant under a subpoena issued, but not pursued, by the defense. In contrast, the accused in this

case did not even know of the existence of the witness who provided the exculpatory evidence to the State. The prosecution suppressed the information it learned from this witness on the day before trial, and the first prong of the test set out above is met.

With respect to the second and third prongs of the test, Flores claims that the evidence suppressed by the prosecution was favorable to her and material to her defense because Casanova's testimony would have corroborated Flores's version of the story. Flores asserts that because there were no eyewitnesses to the shooting, her credibility in describing the events was crucial. We agree. Logic dictates that evidence from a disinterested witness corroborative of the defendant's version of the events would be favorable to the defendant. Moreover, this evidence would be material to the defense because, had it been disclosed, a reasonable probability exists that the outcome of the case would have been different. If the jury had heard Casanova testify that Flores yelled "Don't do it!" just prior to the shooting, the jury may very well have reached a different result. All three prongs of the test are met and the trial court abused its discretion in failing to grant the motion for new trial filed by Flores based on the suppression of this evidence by the prosecution. Flores's first point of error is sustained.

We reverse and remand this case to the trial court for further proceedings.