IN THE
TENTH COURT OF APPEALS
 

No. 10-00-169-CR

     JACKIE RUSSELL KEETER,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 220th District Court
Hamilton County, Texas
Trial Court # 6978
                                                                                                                
                                                                                                         
OPINION ON PETITION FOR DISCRETIONARY REVIEW
                                                                                                                

      On January 8, 2003, we issued an opinion reversing Keeter’s conviction and remanding the
cause for further proceedings, because the State did not disclose material exculpatory evidence at
Keeter’s trial. Now, to further address the State’s argument, and the dissent’s, that this issue was
not preserved for appellate review, we withdraw our earlier opinion and issue this one.
Background
       A jury convicted Jackie Russell Keeter of indecency with a child—his stepdaughter J.K. 
After trial, J.K. recanted. Keeter filed a motion for new trial which was denied after a hearing. 
We reversed the conviction after we found that the trial court abused its discretion in disbelieving
the recantation and in denying the motion. Keeter v. State, 43 S.W.3d 667 (Tex. App.—Waco
2001). But the Court of Criminal Appeals did not find an abuse of discretion, reversed our
judgment, and remanded the case for further proceedings. Keeter v. State, 74 S.W.3d 31 (Tex.
Crim. App. 2002).
      In his original appeal, Keeter raised a second issue which we did not resolve because of our
finding about the recantation. He claimed the State withheld important exculpatory evidence
which he could have used at trial to impeach J.K.’s credibility. We will now address the issue.
Standard of Review
      Before trial, defense counsel requested that the court issue its standard pretrial discovery
order; the request was granted. Number four of the order states: “Any other evidence or
information which: (1) is favorable to the Defendant and creates a probability of his innocence
sufficient to undermine confidence in a contrary finding, or (2) that tends to negate the guilt of
Defendant or mitigates the offense.” Cf. Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon Supp.
2003) (The State “shall not suppress facts or secrete witnesses capable of establishing the
innocence of the accused.”).
      Keeter does not complain on appeal about a violation of the court’s order; rather he complains
of a violation of Brady v. Maryland, which requires that a prosecutor disclose to defense counsel
material information which is exculpatory. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10
L.Ed.2d 215 (1963); McFarland v. State, 928 S.W.2d 482, 511 (Tex. Crim. App. 1996),
overruled on other grounds, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). Information is
“material” when “there is a reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different.” Little v. State, 991 S.W.2d 864,
866 (Tex. Crim. App. 1999); Nickerson v. State, 69 S.W.3d 661, 676 (Tex. App.—Waco 2002,
pet. ref’d) (citing Little).


 A Brady violation is one of due process, and a three-part test is used
to evaluate whether a violation has occurred: (1) the State failed to disclose evidence, regardless
of the prosecution’s good or bad faith; (2) the withheld evidence is favorable to the defendant; (3)
the evidence is material, i.e., there is a reasonable probability that had the evidence been
disclosed, the outcome of the trial would have been different. Ex parte Richardson, 70 S.W.3d
865, 871 (Tex. Crim. App. 2002); Little, 991 S.W.2d at 866. The question is “not whether the
defendant would more likely than not have received a different verdict with the evidence, but
whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy
of confidence.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490
(1995); see Cook v. State, 940 S.W.2d 623, 627 (Tex. Crim. App. 1997) (confidence in the
“outcome”). And as mentioned, the State’s good or bad faith in withholding favorable evidence
is irrelevant. Cook, 940 S.W.2d at 627; see United States v. Agurs, 427 U.S. 97, 110, 96 S.Ct.
2392, 2400-01, 49 L.Ed.2d 342 (1976). Finally, if the appeals court finds a Brady violation, the
remedy is a reversal. See Ex parte Richardson, 70 S.W.3d at 870; Nickerson, 69 S.W.3d at 676. 
We understand that to be so because a Brady analysis includes a “harm” analysis; i.e., for there
to be a Brady violation, harm must have occurred.
Preservation of Complaint
      The State questions whether the complaint was preserved. Courts have reviewed Brady claims
preserved by a timely complaint making the trial court aware of the violation. Tex. R. App. P.
33.1(a); e.g., McFarland, 928 S.W.2d at 511 (by pre-trial discovery motion); Nickerson, 69
S.W.3d at 672 (by motion for mistrial during punishment phase). Keeter filed a First Amended
Motion for New Trial in which he stated, in part: “The verdict in this cause is contrary to the law
and the evidence. . . . Evidence establishing the defendant’s innocence was withheld by a material
prosecution witness.” Attached to the motion was an affidavit from J.K.’s stepmother, Rhonda,
whom the State called at trial as its “outcry” witness. It read in part: “[J.K.] has change her story
to [sic] many times while talking to me about [Keeter]. I told [the prosecutor] that I did not
believe that [Keeter] had not [sic] done what [J.K.] said. [The prosecutor] said that he would not
put me on the stand due to my beliefs.”
       We disagree with the State and find that the motion with the affidavit is sufficient to preserve
the complaint. Accordingly, we will review Keeter’s Brady claim.
Brady Claims and Marin
      The State also insists, however, that Keeter’s motion was not specific enough to preserve the
complaint, and that the affidavit should be given no weight in that determination. Thus, a question
is also presented whether, under the rules in Marin v. State, a Brady claim must be preserved. 
Marin v. State, 851 S.W.2d 275 (Tex. Crim. App. 1993).
      The Marin Court held that a defendant's rights arise from distinct rules that generally fall into
one of three categories: (1) absolute requirements and prohibitions; (2) rights which must be
implemented by the system unless expressly waived; and (3) rights which are implemented only
upon request. Id. at 279. Absolute requirements and prohibitions, as well as rights which must
be implemented unless waived, cannot be made subject to procedural default on appeal because,
by definition, they are not forfeitable. Id. Determining which category a right falls into will
usually settle the question of whether a procedural default occurred, and therefore whether the
issue was preserved for appeal. Id.
      Absolute rights cannot be waived or forfeited, even with consent. Id. at 280. Implementation
of these rights is not optional and cannot be waived or forfeited. Id. at 279. A defendant may
complain about the violation of an absolute right or prohibition on appeal without having raised
the question in the trial court. Id. at 280. These rights pertain to systemic requirements of the
judicial proceeding. Id. at 279.
      An example of a right in the first category is jurisdiction. Stine v. State, 908 S.W.2d 429,
431 (Tex. Crim. App. 1995). Lack of jurisdiction over a case renders the judgment void. Ex
parte Seidel, 39 S.W.3d 221, 224 (Tex. Crim. App. 2001) (citing Hoang v. State, 872 S.W.2d
694, 698 (Tex. Crim. App. 1993)). Also, a defect which renders a sentence void may be raised
for the first time on appeal. Heath v. State, 817 S.W.2d 335, 336 (Tex. Crim. App. 1991). 
Another example is a challenge to the constitutionality of a statute. Reyes v. State, 753 S.W.2d
382, 383 (Tex. Crim. App. 1988) (“unconstitutional statute is void from its inception and cannot
provide a basis for any right or relief”); Rabb v. State, 730 S.W.2d 751, 752 (Tex. Crim. App.
1987); Garcia v. Dial, 596 S.W.2d 524, 527 (Tex. Crim. App. [Panel Op.] 1980); Bryant v.
State, 47 S.W.3d 80, 84 (Tex. App.—Waco 2001, pet. ref’d) (facial constitutionality of a statute). 
Furthermore, a violation of the ex post facto clause can be raised for the first time on appeal. 
Ieppert v. State, 908 S.W.2d 217, 220 (Tex. Crim. App. 1995). Finally, in Blue, the Court held
that remarks the judge made to the jury panel which “imparted information to the venire that
tainted the presumption of innocence” was “fundamental error of constitutional dimension and
required no objection” from defense counsel to preserve it for appellate review. Blue v. State, 41
S.W.3d 129, 132 (Tex. Crim. App. 2000).
      Rights in the second category—waivable rights—are “so fundamental to the proper functioning
of our adjudicatory process” that they do not vanish easily. Marin, 851 S.W.2d at 278. A litigant
does not give them up unless he does so plainly, freely, and intelligently. Id. at 280. If a
defendant wants to relinquish one of these rights, he must expressly do so, i.e., there must be an
"intentional relinquishment or abandonment of a known right or privilege." Id. at 279 (quoting
Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Sometimes
the waiver must be in writing; always, it must be on the record. Id. at 280. The judge has an
independent duty to implement such rights, absent an effective waiver. Id. Some, but not all,
constitutional rights fall into this category. Id. at 279. Examples of category-two rights are the
right to counsel and the right to a jury trial. Ieppert, 908 S.W.2d at 219. Also, a complaint of
ineffective assistance of counsel cannot be procedurally barred under Tex. R. App. P. 33.1. 
Robinson v. State, 16 S.W.3d 808 (Tex. Crim. App. 2000). 
      The third category includes rights that arise from rules that are optional with a defendant. 
Marin, 851 S.W.2d at 278. Rule of Appellate Procedure 33.1 applies only to these rights; the
judge must implement them only on request of a party, and they will be forfeited if no complaint
is made at trial. Id. at 280; Tex. R. App. P. 33.1. The judge has no independent duty to enforce
these rights. Marin, 851 S.W.2d at 278. “Forfeiture” and “procedural default” are synonymous. 
Id. at 279. Ordinary objections to evidence and procedural benefits are included in this category. 
Id. at 278. Some constitutional rights fall into this category. Ieppert, 908 S.W.2d at 221 (Baird,
J., concurring). Rule 33.1 reaffirms these basic principles of adversarial litigation; it was not
meant to amend or repeal them. Marin, 851 S.W.2d at 280. Because Rule 33.1 may not
“abridge, enlarge, or modify” a defendant’s substantive rights including the statutory right to
appeal, it does not apply to errors concerning the first two categories of rights. Id. at 278, 280;
Tex. Gov’t Code Ann. § 22.108 (Vernon Pamph. 2003).
      The State would have us place Brady claims in category three. The Court of Criminal
Appeals has not decided the matter. But in a recent case, the United States Supreme Court implied
that Brady claims are in category one. United States v. Ruiz, 536 U.S. 622, 122 S.Ct. 2450, 153
L.Ed.2d 586 (2002). In Ruiz, the defendant refused to sign a plea-bargain agreement in which she
was required to waive the receipt of certain Brady material. U.S. v. Ruiz, 241 F.3d 1157, 1161
(9th Cir. 2001). The Ninth Circuit held that, while some constitutional rights are waived by
entering a guilty plea (e.g., rights to jury trial, to confront one’s accusers, and against self-incrimination), and some constitutional rights may be expressly waived in plea-bargain agreements
(e.g., right to appeal), other constitutional rights cannot be waived, including the right to Brady
material (and breach of plea agreement, illegal sentence, unanimous jury verdict). Id. at 1163-64. 
In Marin terms, the Ninth Circuit placed all Brady claims in category one. The Supreme Court,
however, ruled that, in a plea-bargain agreement such as Ruiz’s, a defendant may waive the right
to Brady impeachment evidence relating to the witnesses against him. Ruiz, 122 S.Ct. at 2454,
2457. The Court distinguished “fairness of trial” issues from “voluntariness of plea” issues. Id.,
122 S.Ct. at 2455. Thus, in Marin terms, the Court placed Brady claims which arise in plea-bargain cases in category two. But significantly, because the Court did not also say that a
defendant may waive his right to Brady material when there is a trial, by implication that is a non-waivable due process right, i.e., a Marin category-one right.
      Placing Brady claims in category one when there is a trial also follows logic and common
sense. First, if placed in category two, under what circumstances would a defendant going to trial
ever intentionally waive disclosure of material exculpatory information? Also, if placed in
category three, then because it is common for a defendant to learn of the Brady material only after
trial, in that event he would be required to object to a violation of which he was unaware until
after the verdict was returned. Furthermore, the Supreme Court has held that the prosecutor’s
duty to disclose Brady material exists without a request from the defendant. Agurs, 427 U.S. at
107, 96 S.Ct. at 2399. It makes little sense to require the defendant to preserve by objection the
non-disclosure of material to which he is entitled without making a request and which the
prosecution has an affirmative duty under the Constitution to turn over. Therefore, to avoid these
illogical results, Brady issues should be included in category one.
      Category-one rights are those fundamental rights involving systemic requirements of a trial. 
Marin, 851 S.W.2d at 279. It seems fundamental that a trial should be conducted and a verdict
rendered under circumstances in which society may have confidence that the defendant received
a fair trial and that justice was done. Otherwise, the “system” fails. And for the prosecution to
fail to disclose to the defendant material exculpatory information compromises this confidence by
“tainting” the fairness of the trial, and that failure should be “fundamental error of constitutional
dimension and require[s] no objection” from defense counsel to preserve it for appellate review. 
See Blue, 41 S.W.3d at 132. 
      Supporting the conclusion that this disclosure by the prosecutor rises to the level of a
fundamental systemic requirement of a fair trial is the fact that the disclosure is required by both
statute and the rules of ethics:
Duties of District Attorneys . . . It shall be the primary duty of all prosecuting attorneys,
including any special prosecutors, not to convict, but to see that justice is done. They shall
not suppress facts or secrete witnesses capable of establishing the innocence of the accused.

Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon Supp. 2003).
 
Rule 3.09. Special Responsibilities of a Prosecutor
 
The prosecutor in a criminal case shall: . . .
 
(d) make timely disclosure to the defense of all evidence or information known to the
prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in
connection with sentencing, disclose to the defense and to the tribunal all unprivileged
mitigating information known to the prosecutor, except when the prosecutor is relieved
of this responsibility by a protective order of the tribunal; . . . .

Tex. Disciplinary R. Prof’l Conduct 3.09(d), reprinted in Tex. Gov’t Code Ann., tit. 2,
subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. 10, § 9).
      In addition, that a prosecutor’s conduct must rise to a high level to ensure fairness in the
system has been eloquently expressed by the Supreme Court:
The United States Attorney is the representative not of an ordinary party to a controversy, but
of a sovereignty whose obligation to govern impartially is as compelling as its obligation to
govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win
a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the
servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. 
He may prosecute with earnestness and vigor-- indeed, he should do so. But, while he may
strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain
from improper methods calculated to produce a wrongful conviction as it is to use every
legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).
      Brady claims should fall under Marin’s category one and need not be “preserved” for
appellate review. 
Analysis
      We will review this complaint in the manner required by the Court of Criminal Appeals in
Ex parte Richardson. Keeter must show: (1) the State failed to disclose evidence, regardless of
the prosecution’s good or bad faith; (2) the withheld evidence was favorable to Keeter; and (3) the
withheld evidence was material, i.e., there is a reasonable probability that had the evidence been
disclosed, the outcome of the trial would have been different. Ex parte Richardson, 70 S.W.3d
at 871.
Did the State Fail to Disclose Favorable Evidence?
      At the hearing on the motion for new trial, Keeter’s attorney testified that, after trial, she
learned from J.K.’s father and step-mother—with whom J.K. lived the two years before trial—that
they did not believe J.K. was telling the truth about Keeter’s molesting her, and they had told the
prosecutor that. J.K.’s father, Travis, testified he did not believe J.K. told the truth about Keeter. 
He said: “[A]ll she has told me through the year was a lie. She has not told me one thing truthful.” 
Travis also testified he told the prosecutor before trial he did not believe J.K. However, he
admitted on cross-examination that prior to that, he had told the prosecutor he believed J.K. 
Rhonda also testified at the hearing that she never believed J.K. from the beginning and told the
prosecutor before trial she did not believe J.K. Rhonda said “[J.K.] kept changing her story one
too many times” about whether Keeter molested her. “She will say he did it, then if we asked -
talked about it, she’ll say he didn’t do it or I never said that. She just wasn’t consistent with her
story. . . . I was not going to tolerate her lying, being dishonest, being disrespectful to other
people. . . . I told [Travis] he either gets her under control to where she minds and listens, not
throw fits, and hits me, be mean to me or she can go back home to her mother.” When asked
“Was your experience with [J.K.] that she lies?”, Rhonda responded: “She lies a lot.” We
conclude that the State withheld from defense counsel the fact that Travis and Rhonda had said
they did not believe J.K., and that she had made contradictory statements about Keeter; this
evidence was favorable to Keeter’s defense because it could have been used to impeach J.K.’s
credibility. Id.
Was the Withheld Evidence “Material”?
      Keeter argues that if the prosecutor had made defense counsel aware before trial that Travis
and Rhonda had said they did not believe J.K., defense counsel would have followed up with
them, learned of the above testimony, and had them testify at trial to discredit J.K.’s testimony. 
Our original opinion stated:
Because we sustain the recantation issue, we need not decide Keeter’s issue under Brady
v. Maryland, that the prosecutor failed to inform defense counsel about what Travis and
Rhonda told him regarding whether J.K. was telling the truth. Brady v. Maryland, 373
U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); see United States v. Bagley, 473 U.S.
667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (Brady extends to evidence which
impeaches the credibility of a witness). However, we note that if the defense lawyer had
known that Travis and Rhonda had potential impeachment evidence, and had interviewed
them and learned their opinions of J.K.’s untruthfulness, both could have been called to
testify at the original trial to impeach J.K.’s character for truthfulness. Tex. R. Evid.
608(a)(1). Rhonda could have testified that J.K. vacillated on whether the abuse even
occurred. Both Travis and Rhonda could have testified regarding their opinion that J.K.
was not a truthful person. When an entire case revolves around the credibility of a single
witness, and the defendant can testify only at the peril of the jury being informed of his
two prior felony convictions, one of which is for the same type of offense, no evidence
is more important to the defense than testimony which impeaches the credibility of that
single witness. Keeter, 43 S.W.3d at 676-77.
      We still hold to that position. J.K.’s testimony was essential to the State. Keeter did not
testify to rebut her testimony, presumably because he had two prior felony convictions—one for
the same type of offense, which he could not afford for the jury to learn about.


 Therefore, his
primary defense was to discredit J.K.’s testimony. To do that, at trial the defense relied on J.K.’s
mother (Eva), the live-in babysitter (Vennie), and Keeter’s father (Jack).
      Eva testified about the date of the alleged incident which J.K. said occurred in the morning. 
Eva said that on that date, J.K. had a half-day of school in the morning, and in the afternoon she
went to a party at a playmate’s house. Keeter was home that day, sick in bed. Eva also said there
were two bedrooms in the house, one occupied by Eva and Keeter and the other by Jack. Vennie
and the four children slept in the living room. When Eva was not at home, Vennie kept the
children. Eva testified Keeter usually worked from 6 a.m. to sometimes 6 to 8 p.m. He had been
working these hours for about a year. She said J.K. and Keeter got along well, and J.K. was not
afraid of Keeter. Also, Eva and J.K. got along well, and J.K. never mentioned to Eva any
problems concerning Keeter.
      Vennie testified that she was at the house with the children practically twenty-four hours a
day, seven days a week. She confirmed that J.K. was in school the morning of the alleged
incident, and Keeter was at home sick. Vennie said Keeter usually worked until 7 or 8 p.m. He
never kept the children, even on weekends; she did. Only she and Eva disciplined the children. 
She testified that J.K. had a good relationship with Keeter and was not afraid of him. Vennie
believed J.K. would have told her about any problem with Keeter.
      Jack also confirmed that J.K. went to school the morning of the alleged incident. J.K. got out
at noon and went to a party at a friend’s. Keeter was at home, sick; Jack was off work and was
also at home. He stated that J.K. confided her problems in him, was not afraid of Keeter, and was
never disciplined by Keeter. He confirmed that Keeter worked 6 a.m. to 6 p.m., five to six days
per week.
      While the testimony of these three witnesses was useful, the contradictions they raised about
J.K.’s testimony were explained by the argument that J.K. just got her days mixed up. As the
State argued in closing: “As far as when this actually happened is not the point. The point is it’s
happened. . . . [T]he fact that these other people say, well, I was there on the 20th and she was at
school, this just didn’t happen this way. That’s not what’s important in this case.” Travis’s and
Rhonda’s testimony had, by far, the highest potential to discredit J.K. But the prosecutor did not
disclose to defense counsel that Travis and Rhonda had told him of their doubts about the truth of
J.K.’s accusations. The question is whether there is a “reasonable probability” that disclosure of
the evidence would have altered the outcome of the trial. Ex parte Richardson, 70 S.W.3d at 871. 
That is, was Keeter afforded a trial resulting in a verdict worthy of confidence. Cook, 940
S.W.2d at 627.
      The Court of Criminal Appeals recently discussed Brady violations in Ex parte Richardson. 
Richardson was convicted of capital murder, and he eventually filed an application for a writ of
habeas corpus. Ex parte Richardson, 70 S.W.3d at 866. One of his complaints was that the State
committed a Brady violation by not disclosing a diary kept by an officer who helped guard—at
secret locations for about a year before trial—the State’s sole eyewitness to the murders. Id. at
871. The officer kept the diary to protect herself from false accusations by the eyewitness whom
the officer said was untruthful. Id. The diary identified other officers who made statements
included in the diary and who later testified they also found the eyewitness untruthful. Id. at 872. 
In granting habeas corpus relief, the Court concluded that the testimony of the several officers
about the eyewitness’s truthfulness was “extremely powerful impeachment evidence,” was
“critical to the State’s case,” and “would, in all likelihood, create the probability sufficient to
undermine confidence in the outcome of the proceeding.” Id. at 872-73.
      Similarly, the State’s case against Keeter rested on the testimony of a single eyewitness, J.K. 
The prosecutor had knowledge of two witnesses close to J.K. who told the prosecutor J.K. was
not truthful. The witnesses had testimony that would have provided powerful evidence calling
J.K.’s credibility into question. Their testimony was admissible to provide non-hearsay evidence
of prior inconsistent statements as well as character evidence to impeach credibility. Tex. R.
Evid. 608, 613(a); see Ex parte Richardson, 70 S.W.3d at 873 (The exculpatory nature of other
evidence, i.e., the names of the other officers, which is revealed through the primary undisclosed
exculpatory evidence (the diary) is to be considered when conducting the Brady analysis.). Failure
of the prosecutor to disclose, coupled with the nature of the withheld information, undermines
confidence in the verdict. Id.
      We conclude that the testimony of Travis and Rhonda was “material,” i.e., there was “a
reasonable probability that, had the evidence been disclosed to the defense, the result of the
proceeding would have been different.” Little, 991 S.W.2d at 866.
Is There a “Blanket Exception to Disclosure” Rule?
      But the State argues an exception. It says the prosecutor does not have to disclose exculpatory
evidence otherwise available to the defense which the defense could discover through reasonable
diligence. The State is correct that under a variety of circumstances, courts have held that the duty
fell to the defendant to discover the complained-of evidence. For example:•evidence of which the defense is already aware, Ex parte Russell, 738 S.W.2d 644, 646
(Tex. Crim. App. 1986); Means v. State, 429 S.W.2d 490, 496 (Tex. Crim. App. 1968);
 
      •    documents the defendant failed to obtain when he failed to have executed a subpoena
duces tecum he had caused to be issued, Jackson v. State, 552 S.W.2d 798, 804 (Tex.
Crim. App. 1976);
 
      •    evidence of the existence of a witness known to exist by the state but whose identity and
whereabouts were unknown to the state, Brown v. State, 513 S.W.2d 35, 36 (Tex. Crim.
App. 1974);
 
      •    public records which defense counsel should have known about and failed to obtain
because of lack of diligence in his investigation, Dalbosco v. State, 978 S.W.2d 236, 238
(Tex. App.—Texarkana 1998, pet. ref’d);
 
      •    evidence that a witness identified the defendant as being at a place away from the murder
when it occurred, in that the defendant supposedly knew where he was at the time of the
murder, yet failed to investigate and find the witness, Rector v. Johnson, 120 F.3d 551,
558-60 (5th Cir. 1997);
 
      •    a full written statement of a witness, never examined by the defense, which was
referenced in a summary of the statement given to the defense, Williams v. Scott, 35 F.3d
159, 163 (5th Cir. 1994);
 
      •    a video-tape of an interview with the alleged victim by his attorney, which the defense
knew existed but which it failed to pursue by a court order to procure the tape from the
attorney, who had claimed attorney-client privilege, United States v. McKenzie, 768 F.2d
602, 607-08 (5th Cir. 1985); and
 
      •    a copy of sworn statement of a witness taken by a bank which the prosecution had, which
the defense knew existed but failed to attempt to obtain from the bank, United States v.
Milstead, 671 F.2d 950, 953 (5th Cir. 1982).
      However, none of these cases supports a “blanket exception” rule (as other cases not cited
may suggest) that defense counsel has a duty to “speculate” about what exculpatory evidence a
witness or a potential witness might know of and to investigate that possible evidence. The cases
do not hold that the prosecution is relieved of its duty under Brady to disclose exculpatory
evidence when defense counsel (a) knows or should know a witness exists, and (b) might discover
the exculpatory evidence if defense counsel asks the right questions of the witness. 
Implementation of such a rule could effectively undermine Brady because it would almost always
relieve the prosecutor of disclosing Brady information. Rather, these cases apply the general rule
that defense counsel has a duty to exercise reasonable diligence to investigate the case and discover
what evidence exists that might aid the defense. What constitutes “reasonable diligence” depends
on the individual circumstances, as shown by the cases listed above.
      A case from the San Antonio court demonstrates the proper application of the rule. In Flores
v. State, an eyewitness gave a written statement which was in the prosecutor’s file. Flores v.
State, 940 S.W.2d 189, 190 (Tex. App.—San Antonio 1996, no pet.). Defense counsel had access
to the file. Id. The day before trial, the witness made oral statements to the prosecutor which
added to her written statement, and the new evidence was favorable to the defense. Id. Even
though the state did not call the witness at trial (presumably because of contradictions between the
oral and written statements), the court held that the prosecutor erred in not disclosing the oral
statements to defense counsel. Id. The court said that, regardless of whether defense counsel read
the witness’s written statement, knew of her existence, and could have located and interviewed
her, the prosecutor was not relieved from disclosing the oral statements under a theory that the
statements would have been discovered by the defense if it had used “reasonable diligence” in its
investigation. Id. at 191. “[W]e cannot agree that the information [the witness] communicated
to the prosecution on the day before trial was equally or fully available to the defense in this case
in the sense envisioned by the court of criminal appeals.” Id. We believe that the rule applied
in Flores should be applied here.
      At trial, Keeter’s defense counsel called three witnesses in an attempt to attack J.K.’s
credibility. The fact that defense counsel had interviewed the witnesses, learned of their
exculpatory testimony, and called them at trial, shows that defense counsel had engaged in
“reasonably diligent” efforts to learn of exculpatory evidence. On the other hand, Travis, as the
father of the allegedly abused child, and her caretaker at the time of trial, would not reasonably
have been thought of by defense counsel to have character-impeaching testimony to offer. And
Rhonda, as the “out-cry” witness and a key witness for the State, would not reasonably be
considered by defense counsel as someone to approach for exculpatory evidence. The fact that
they might have had such evidence does not shift the prosecutor’s duty of disclosure under Brady
to defense counsel. Id. at 191.
      We sustain the issue.



Conclusion
      Travis’s and Rhonda’s factual statements to the prosecutor were Brady material crucial to the
defense which the State should have disclosed. Keeter’s due process rights were violated. 
Therefore, we sustain the issue, reverse the conviction, and remand the cause for further
proceedings. 
      We withdraw our opinion and judgment dated January 8, 2003, and substitute this opinion
therefor. Tex. R. App. P. 50. The State’s Petition for Discretionary review is dismissed by
operation of law. Id.

                                                                   BILL VANCE
                                                                   Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Chief Justice Davis concurring)
      (Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed April 3, 2003
Publish
[CR25]