**AFFIRMED; Opinion Filed August 14, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01048-CR

### GEORGE EVANS TAYLOR, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F13-63208-N**

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Evans

Appellant George Evans Taylor appeals his conviction for robbery. In two issues, appellant contends that the trial court abused its discretion by allowing the State to: (1) present irrelevant evidence and (2) present evidence that was more prejudicial than probative. Appellant seeks reversal and a new trial. We affirm.

### BACKGROUND

In the early morning hours of July 14, 2013, police officers Jose Gamez and Kesha Ferguson responded to a 911 call concerning an altercation at a 7-Eleven near downtown Dallas. The officers found James Nelson lying on the ground in an awkward position. Officer Kevin Souders also arrived on the scene and noted that he could not see Nelson's chest rise and fall. Officer Souders testified that he found a pulse although it was only about 15 beats per minute.

Officer Souders further testified that something happened to put Nelson's body in that position because he located Nelson's dentures a few feet away from his body as well as blood splattered in the parking lot, but not where Nelson was lying. Lieutenant Eric Velasquez, a Dallas firefighter and trained EMT, also responded to the scene. Lieutenant Velasquez testified that Nelson was not breathing when he arrived and that an oral airway was inserted. Lieutenant Velasquez further testified that Nelson had a rapid and weak pulse but that they later lost the pulse and began CPR. Finally, Lieutenant Velasquez noted that an IV was inserted and Nelson was given epinephrine in an attempt to restart his heart.

DeAndre Campbell witnessed the events on the night of the altercation between Nelson and appellant. Campbell, appellant and Nelson were part of a homeless community living around the Margaret Hunt Hill Bridge. Campbell testified that all day on July 13, 2013 and into the morning hours of July 14 the three of them were drinking beer and panhandling at the 7-Eleven and that Nelson was doing crack cocaine. Nelson and appellant got into an argument because Nelson owed appellant five dollars, appellant wanted his money, and Nelson would not give it to him. As Nelson tried to stand up, appellant got up and slapped Nelson, knocking him out. Afterwards, appellant went through Nelson's pockets for money and told Campbell to leave because some women were calling the police.

Detective Cayce Shelton interviewed appellant and appellant admitted to shoving and slapping Nelson and taking twenty dollars or so out of Nelson's pocket. Appellant told Detective Shelton that he was friends with Nelson, but that he was mad at Nelson for smoking crack out in the open because it would bring out the police.[1]

---

[1] On the same day as the robbery, Nelson died. His death was initially determined to be caused by a crack cocaine overdose.

Appellant was indicted for the offense of robbery which was defined as follows in the indictment:

> intentionally, knowingly and recklessly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury, to JAMES NELSON, hereinafter called complainant, by STRIKING SAID COMPLAINANT'S HEAD WITH DEFENDANT'S HAND[.]

The indictment also alleged that appellant had two prior convictions for robbery. Appellant pled not-guilty to the offense of robbery at trial. Appellant's offense was similarly defined in the jury charge:

> If you find and believe from the evidence beyond a reasonable doubt that the defendant, George Evans Taylor, on or about the 14th day of July A.D., 2013, in County of Dallas and said state, did then and there intentionally, knowingly or recklessly, while in the course of committing theft of property and with intent to obtain or maintain control of property, cause bodily injury to James Nelson, hereinafter called complainant, by striking said complainant's head with defendant's hand, you will find the defendant guilty of robbery, as charged in the indictment.

The jury found the appellant guilty of robbery. The punishment hearing then commenced and the State read the two prior convictions that had been alleged in the indictment.[2] Appellant pled not true to these two enhancement paragraphs. The State presented testimony by Rocky Wiggins regarding appellant's 2011 assault on him in which appellant beat Wiggins causing injuries and permanent damage to his eye for a dispute over $10. In addition, Officer Natalie Karr testified about a 2010 incident in which appellant punched a glass jar into a man's face as he was drinking from it causing it to shatter in his face. Next, Robert Johnson testified that he

---

[2] The indictment included the following enhancement paragraphs:

> And it is further presented to said Court that prior to the commission of the offense or offenses set out above, the defendant was finally convicted of the felony offense of ROBBERY, in the CRIMINAL DISTRICT COURT NO. 2 of DALLAS County, Texas, in Cause Number F0573351, on the 26TH day of JANUARY, 2007,

> And that prior to the commission of the offense or offenses for which the defendant was convicted as set out above, the defendant was finally convicted of the felony offense of ROBBERY, in the 291ST JUDICIAL DISTRICT COURT of DALLAS County, Texas, in Cause Number F94-53774, on the 26TH day of OCTOBER, 1994[.]

witnessed appellant beating another man in 2013 and called 911 to report the incident. Officer Matthew Kalash also testified that he arrived at the scene of the 2013 assault. Officer Kalash identified appellant as the assailant and noted that appellant had beaten and stolen $3 from the victim. The State also presented evidence of five other offenses including convictions for two robberies, unlawful possession of a controlled substance, theft of person, and unauthorized use of a motor vehicle. The jury found both enhancement paragraphs true and sentenced appellant to seventy years' imprisonment. Appellant filed a motion for new trial which the trial court overruled. He then filed this appeal.

## ANALYSIS

### A.      Standard of Review

A trial court's decision to admit or exclude evidence is viewed under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996).

### B.      The Evidence in Dispute Was Relevant and Not More Prejudicial than Probative

Appellant argues that in permitting the State to introduce evidence that the victim, after being slapped by appellant and falling to the ground, was possibly close to death by the time the first responders arrived was: (1) irrelevant and (2) highly prejudicial. We disagree.

At trial, and outside the presence of the jury, the following exchange took place:

| | |
|---|---|
| State's Atty: | Your Honor, the next witness is Officer Souders with the Dallas Police Department. When he arrived on the scene, he started administering first aid to the complainant. Upon taking his pulse, he had a little pulse rate that was very faint where he at first thought -- because he first didn't see a rise and fall in the chest, he thought the complainant was already deceased and he checked his pulse and found a pulse. He is going to testify that they waited on paramedics to arrive. Paramedics started performing CPR on the complainant. |

| | |
|---|---|
| The Court: | And that's the sum total of the testimony? |
| State's Atty: | That is going to be the gist regarding the death portion, yes. |
| The Court: | What is objectionable about it? |
| Appellant's Atty: | Judge, I'm going to object that this is, one, not relevant to the elements of robbery; two, it is not contextual. It is all after the fact. The only thing that this has a chance of doing is inflaming the jury hearing about an injury that they are later going to hear, if we go into this, that the M.E. would testify that nothing Mr. Taylor did can be shown to have caused this injury. So the only thing this would do is inflame the jury. So, one, it's not relevant; two, it's not contextual and whatever probative value it has is outweighed by -- |
| The Court: | The Court heard the State and what the Court does recollect is that during the State's opening statement it described how the deceased was struck by the defendant and how he felt [sic] and how his dentures left his mouth and that there was some blood as a result. Is that not true? |
| Appellant's Atty: | That is true, Judge. But the testimony that the State has just proffered doesn't go into that at all. It doesn't go into the strike; it doesn't go into the dentures. All of this is just about the fact that he is essentially about to code. |
| State's Atty: | Judge, he's going to discuss the dentures. He's going to tell us where the dentures were located. He's going to tell us about the blood spatter. He's going to tell us what he did pursuant to treatment. This officer did administer treatment and part of his treatment was to determine what was wrong with him name [sic] is an element the pain. |
| Appellant's Atty: | And that's fine. I have no objection to the State asking him about dentures on the ground or the blood on the ground. I don't have an objection to the State getting testimony from him that he rendered first aid. I think -- that is all fine and that is all contextual. But the moment we go past to talk about low pulse, not seeing his chest go up and down, I thought he was already dead, when EMS comes in. They start doing CPR, all of that. We know that that has to do with the facts that he had OD'd on cocaine and has nothing to do with Mr. Taylor. So being that it does not go towards the elements of the offense and it's not a result of Mr. Taylor's conduct, that's the only thing it could do. |

| | |
|---|---|
| State's Atty: | Your Honor, the State would say that it wouldn't go to that at that time. This officer didn't know what he was dealing with. He was doing procedures for a man that was unconscious by just being hit. He didn't know anything about drugs. He is rendering first aid to a man who does not have a pulse. I would argue that it is contextual -- |
| The Court: | The Court at this time has heard enough to make a ruling. It is the Court's opinion that the testimony is admissible. And if you objected under 404(b), the Court first of all finds that the testimony is relevant and that having found that it's relevant then finds that its prejudicial value is not outweighed by the inflammatory -- well, it's admissibility and value to the jury is not outweighed by the prejudicial effects. |
| Appellant's Atty: | May I have a running objection on this entire line of testimony? |
| The Court: | You may. That is your prerogative as counsel. It is admissible. That is the Court's ruling. |

### 1.    Relevance

Appellant first argues that the introduction of Nelson's near-death physical condition was irrelevant. We disagree.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. In this case, appellant was charged with the offense of robbery. A person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 429.02 (West 2011). A "bodily injury" is defined as physical pain, illness, or any impairment of physical condition. *Id*. at § 1.07(a)(8) (West Supp. 2014).

Here, Nelson, the deceased victim, was not available to testify about his pain or physical condition. Further, Detective Souders testified that, although Nelson was lying in an awkward position, there was no visible injury on him. Accordingly, the testimony regarding Nelson's

physical condition was relevant to whether Nelson had suffered an element of the crime— whether appellant had intentionally, knowingly, or recklessly caused bodily injury to Nelson. As such, we cannot conclude that the trial court abused its discretion by finding this testimony relevant and overrule appellant's first issue.

### 2.        Prejudicial

Appellant next argues that even if the evidence was relevant, its probative value was more prejudicial than probative and contributed to the lengthy sentence assessed against appellant. Again, we disagree.

There is a presumption that relevant evidence will be more probative than prejudicial. *See Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Rule 403, however, allows for the exclusion of relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. When an appellant challenges the admissibility of the evidence under rule 403, the trial court must conduct a balancing test. *See Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998). When undertaking a Rule 403 analysis, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The first two *Gigliobianco* factors involve the probative value of the evidence—how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation coupled with the proponent's need for that item of evidence. *Id.* at 641. As discussed above, the trial court could have determined that the disputed evidence was probative of establishing whether appellant had intentionally, knowingly, or recklessly caused bodily injury to Nelson. As the victim was deceased, he was not available to testify about his pain or physical condition. Further, because Detective Souders testified that Nelson did not have a visible injury, the evidence regarding Nelson's physical state tended to make it more probable that Nelson had sustained a bodily injury. Therefore, these factors weigh in favor of admission of the evidence.

As for the third factor, the evidence at issue in this case is not so inherently inflammatory that they would tend to elicit an emotional response and impress a jury in some "irrational yet indelible way." *See Wheeler v. State,* 67 S.W.3d 879, 889 (Tex. Crim. App. 2002). The trial court allowed evidence of Nelson's near-death physical condition by Detective Souders and Lieutenant Velasquez, but the jury did not hear any evidence that Nelson later died. As such, this factor weighs in favor of admission of the evidence.

The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the evidence. *See Gigliobianco,* 210 S.W.3d at 641 ("Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues."). Detective Souders's testimony regarding the physical condition of Nelson was clear and brief. As a paramedic, Lieutenant Velasquez testified in more detail about the first aid provided and Nelson's physical condition when he arrived. The State argues that it only had its witnesses describe Nelson's physical condition in order to rebut appellant's argument that Nelson had no bodily injury. Thus, these factors weigh in favor of admission.

–8–

The fifth factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* The testimony regarding Nelson's physical condition was not prone to this tendency, as it pertained to matters that could be easily understood by a jury. Hence, this factor also weighs in favor of admission. After completing the balancing test, we conclude that the trial court's decision to admit the evidence was not an abuse of discretion.

Further, even if we had concluded that the trial court erroneously admitted the evidence, appellant's substantial rights were not affected. *See* TEX. R. APP. P. 44.2(b) (nonconstitutional error that does not affect appellant's substantial rights must be disregarded). If error is assumed for purposes of this analysis only, we proceed to conduct a harm analysis. *See Taylor v. State*, 93 S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. ref'd) ("If the appellate record in a criminal case reveals nonconstitutional error that is subject to review under Tex. R. App. P. 44.2(b), we do not reverse a judgment of conviction or punishment unless we determine the error is such that it affects the substantial rights of the defendant. In order to properly conduct a harm analysis under Rule 44.2(b), we are to determine whether the error affected a substantial right of the defendant. The Texas Court of Criminal Appeals has opined that, in order to make this determination, we must decide whether the error had a substantial or injurious effect on the jury's verdict."). Texas courts have determined that substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, we have a fair assurance that any alleged error did not affect any substantial right belonging to appellant. The appellant confessed to shoving and slapping Nelson and taking

twenty dollars or so out of Nelson's pocket in his interview with Detective Shelton. The DVD of this interview was entered as an exhibit. Further, there was Campbell's eyewitness testimony of the events at issue. In regard to appellant's allegation that evidence of Nelson's near-death physical condition lead to the lengthy sentence assessed against appellant, we would note that the record also contains extensive evidence at punishment of appellant's prior convictions. Specifically, the jury heard several witnesses describe prior assaults, robberies and beatings by appellant. In one incident, appellant caused permanent eye damage to a victim. In another incident, appellant smashed a glass jar into the victim's face. The State also presented evidence of five other offenses including convictions for robberies, unlawful possession of a controlled substance, theft of person, and unauthorized use of a motor vehicle. Accordingly, the totality of appellant's prior acts and convictions could also account for the jury's 70-year sentence. Considering the record in its entirety, we conclude that this alleged error by the trial court was harmless and overrule appellant's second issue.

## CONCLUSION

We resolve appellant's issues against him and affirm the trial court's judgment.

/s/ David Evans
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
141048F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GEORGE EVANS TAYLOR, Appellant

No. 05-14-01048-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F13-63208-N.
Opinion delivered by Justice Evans.
Justices Fillmore and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 14th day of August, 2015.